# Richmond.

## SAM PALMER v. COMMONWEALTH.

### November 12, 1925.

1. HOMICIDE—*Murder in the First Degree—Deliberation—Evidence Sufficient to Sustain Verdict—Case at Bar.*—In the instant case, accused was prosecuted for the killing of a prohibition officer. At the time of the killing, deceased was attempting to arrest accused. Deceased said to accused: "Halt! Put down that gun!· Don't you shoot!" Immediately afterwards two shots were heard and it was apparent that one of these shots, fired by accused, killed deceased. Deceased was attempting to arrest accused legally, and it could be inferred from the circumstances that accused knew of deceased's purpose and recognized him. That the homicide was deliberate was indicated by previous statements of accused to the effect that he would shoot if prohibition officers attempted to arrest him.

   *Held:* That a conviction of murder in the first degree must be sustained unless some substantial right of the accused had been denied him by the trial court.

2. JURY—*Drawing Jury—Presence of Judge—Section 4895 of the ·Code of 1919—Case at Bar.*—In the instant case the list of jurors to be summoned was drawn at the courthouse, while the judge was engaged in the court room holding a special term of court, and the claim was made that it was necessary for him to be personally present at the drawing, which occurred in the clerk's office. The contention was because the judge was in court it could not be held that he was absent within the meaning of section 4895 of the Code of 1919.

   *Held:* That there was no merit in this contention.

3. JURY—*Drawing of Jury—Presence of Judge.*—The jury box and list are in the custody of the clerk in the clerk's office, and unless the judge's actual presence in the clerk's office can be secured, he is absent within the meaning of section 4895 of the Code of 1919. When the judge is presiding in court, though in the same county, he is absent performing a conflicting duty, one which he only at the time can perform, and the other provisions of the statute (section 4895 of Code of 1919) for the drawing of juries become operative.

4. JURY—*Felony—Additional Jurors—Venire Returnable at Same Term of Court—Case at Bar.*—In the instant case it appeared that the regular *venire facias* was exhausted, and so it became necessary to obtain

additional jurors, and such additional jurors were obtained from a list of talesmen summoned under a *venire facias* which had been issued, returnable to the same term of court, for the trial of another, who was also charged with a felony.

*Held:* That this was expressly authorized by Code of 1919, section 4895, and even without the clause in section 4895 in regard to the effect of irregularities in writs of *venire facias*, the action of the court would have furnished no ground for reversal.

5. Jury—*Additional Jurors—Selection from List Instead of Drawing by Lot from Box—Case at Bar.*—In the instant case, after the exhaustion of two writs of *venire facias*, the panel was still incomplete, and it was necessary to summon more jurors. In getting these additional jurors the judge selected them from the names on the list provided for by statute, instead of drawing these additional names by lot from the box.

*Held:* That this was not an irregularity, but done strictly in accordance with section 4895 of the Code of 1919.

6. Jury—*Effect of Irregularities in Writ of Venire Facias, etc.—Section 4895 of the Code of 1919.*—Section 4895 of the Code of 1919, providing for the effect of irregularities in a writ of *venire facias* or in the drawing, summoning, returning or impanelling of jurors, etc., is effective and those who rely upon insignificant irregularities in this respect must show either abuse of power or some other substantial injustice to the accused.

7. Homicide—*Evidence—Deceased a Prohibition Officer—Appointment and Qualification of Deceased as a Prohibition Officer—Case at Bar.*—In the instant case, a prosecution for the murder of a prohibition officer when attempting to arrest accused, the trial court did not err in permitting the prosecution to prove by the order book of the circuit court that the deceased presented a certificate showing his appointment as a prohibition inspector to hold his office during the pleasure of the commissioner, and showing his qualification as such inspector by taking and signing the oaths prescribed by law.

8. Homicide—*Proof of other Crimes—Statements of Accused that he Intended to Resist Arrest—Case at Bar.*—In the instant case, a prosecution for the murder of a prohibition officer when he was attempting to arrest accused, statements of the accused clearly indicating that it was his purpose to resist by violence any attempt of officers to arrest him for his violations of the prohibition law, were not inadmissible as violating the rule that evidence of independent, unconnected and collateral crimes cannot be introduced to the prejudice of the prisoner charged with a specific crime. The evidence was introduced to show the motive of accused and to fix the degree of crime. The trial judge was careful to state the reason for admission of the evidence and to caution the jury against any misapplication of it.

9. HOMICIDE—*Killing of an Officer when Attempting to Make an Arrest—Instructions Ignoring the Fact that Accused was Resisting Arrest—Case at Bar.*—In the instant case, a prosecution for murder, deceased was a prohibition officer and accused killed him in resisting a legal arrest, therefore it was not error for the trial court to refuse several instructions offered for the accused which ignored the established fact . that the accused at the time of the homicide was resisting legal arrest by the sheriff and the deceased. In attempting to arrest accused, the sheriff and the deceased were simply attempting to . perform their public duty, and the trial court was right in declining to instruct as if accused had been waylaid by strangers upon the public highway and violently assaulted without explanation, justification or excuse.

10. ARREST—*Duty to Arrest—Warrant Issued—Case at Bar.*—Where a warrant had been issued charging accused with a felony, it was the legal duty of the sheriff and a prohibition officer to arrest him. The officer had the right to stop accused upon the highway and to arrest . him, and in the instant case there was not the slightest reason to . suppose that accused did not recognize these officers, nor that he did not intend to evade arrest by violence, and if it became necessary even to kill them.

11. ARREST—*Excessive Force—Instructions—Case at Bar.*—In a prosecution for the killing of a prohibition officer, an instruction that when an · officer attempts to arrest a person charged with a felony and uses · more force than is reasonably necessary to make the arrest, the officer himself becomes a wrongdoer and the person whose arrest is sought, if himself without fault, can resist such excessive force and even kill the officer if necessary to preserve his own life, fully protected accused.

12. APPEAL AND ERROR—*Instructions—Instructions Fully Covered by others Given.*—It is not error to refuse to give instructions asked for where the instructions refused are either erroneous or fully covered by those given.

13. CRIMINAL LAW—*Presence of Accused.*—The courts rigidly enforce the prisoner's right to be present at each stage of the trial from his arraignment to his sentence, when anything is to be done that can , effect his interest. Generally stated, the rule is that he must be present on his arraignment, when any evidence is given or excluded, when the jury is charged, when the trial court wishes to communicate · with the jury in answering questions by them, and when the jury receives further instructions. He must be present at every stage · of the trial proper.

14. CRIMINAL LAW—*Presence of Accused—Preparation of Instructions—Case at Bar.*—In the instant case, a trial for murder, it was objected after verdict that the defendant was not present when the instructions asked for by Commonwealth and the defendant were presented to ·

the judge, nor when the instructions were argued by counsel. After the adjournment of court for the day, the judge and counsel met and considered the instructions to be given in the case. The next morning before court convened, the judge, in the absence of counsel, examined the instructions, marked those to be approved and those to be disapproved. After court opened the judge read to the jury the instructions approved and handed to the clerk for preservation the instructions that he disapproved.

*Held:* That this practice was unobjectionable and not forbidden by section 4894 of the Code of 1919, providing that one tried for a felony has a right to be present during the trial.

15. CRIMINAL LAW—*Presence of Accused—Preparation of Instructions.*— When the trial of a felony case is temporarily suspended in order that the judge may investigate legal questions presented by the instructions which are tendered, this is no part of that trial before a jury at which the presence of the accused is necessary. His presence, however, is necessary when the trial proper has been resumed, when the trial judge has reached his conclusions and is about to communicate the instructions to the jury. When this occurs, the trial is resumed, but the interval has been devoted, not to the trial, but to preparing for the trial.

Error to a judgment of the Circuit Court of Alleghany county.

*Affirmed.*

The opinion states the case.

*O. B. Harvey* and *Charles Curry*, for the plaintiff in error.

*John R. Saunders, Attorney-General; Leon M. Bazile and Lewis H. Machen, Assistant Attorney-Generals,* for the Commonwealth.

PRENTIS, P., delivered the opinion of the court.

[1] The plaintiff in error has been convicted of murder in the first degree and sentenced to confinement in the penitentiary for thirty years. This is a general statement of the outstanding facts:

L. S. McMannaway, the deceased, a prohibition officer co-operating with C. A. Gum, the sheriff of Bath county, went to the western part of Bath county searching for a still which was supposed to be in that vicinity. They found none, and were returning home by a route which led them into Alleghany county. As they were descending a mountain road in a car, they saw another car approaching from the opposite direction. The road was narrow. They recognized Jesse Scott and the accused, Sam Palmer, as the occupants of the approaching car, for both of whom they knew warrants of arrest had been issued, charging each of them with a felony arising out of their alleged violations of the prohibition statute. Gum knew Scott and the deceased knew Palmer, the accused.

The sheriff testified that he knew that Scott would run rather than shoot, and for the purpose of making the contemplated arrest he purposely brought his car in collision with the other, so as to bring both to a stop. The sheriff then told him to stop and not get out. Then Scott started to jump out of the car; Gum jumped out and caught him, and a desperate struggle ensued between them. During this time the accused and the deceased had also alighted, and in seeking to make the arrest the deceased said to the accused. "Halt! Put down that gun! Don't you shoot!" and just after this remark Gum heard two shots. It is perfectly apparent that one of these shots, then fired by Palmer, killed McMannaway almost instantly. The accused was also seriously wounded, manifestly by a shot fired by the deceased. Then the accused, while the sheriff was holding Scott, came back of him and struck him (the sheriff) serious blows on the head, fracturing his skull and rendering him unconsious. It is apparent that this attack upon the sheriff was made by the accused be-

cause the sheriff, who was then holding Scott, testified that Scott did not strike him, and no other person was present within striking distance.    The accused and Scott then left the scene, taking with them all of the weapons which the sheriff and the deceased possessed, except the pistol of the deceased, which when found contained two empty shells.    That the sheriff and the deceased were attempting to arrest Scott and the accused legally is perfectly apparent, both from their conduct and language.    They had information that the accused and Scott were traveling together in a car without a license, and had on that very day talked about arresting both of them.    If not equally apparent, it can certainly be inferred that Scott and the accused knew of their purpose, and recognized them, because it is hardly to be conceived that such habitual law-breakers as they are shown to be did not know both the sheriff, who had been in office more than twelve years, and McMannaway, the prohibition officer, who had qualified and operated in that territory for four years.

Neither Scott nor the accused testified.

That the homicide was deliberate is indicated by four previous statements which the accused, Palmer, had made to different people on several occasions. Among them, referring to an occurrence when officers had blocked the road, that if they blocked the road for him a shooting match was liable to happen; that on another occasion, while he was illegally carrying whiskey, he was told that the officers would get him sooner or later, and he replied that when they got him he would get some of them.    Then at another time he said, while discussing prohibition officers, that he did not bother anybody, and was not going to be bothered, "but if they fooled with him, he would lay a forty-five or some kind of a gun up in their face."    On still another

occasion while discussing the same subject, when some one made the statement that there were four officers along the road looking for him, he said he would like to see four officers arrest three of them.

While there is some conflict between the evidence of the sheriff, Gum, and that of two or three witnesses who claimed to be in sight of but not at the scene, their apparently biased and inconsistent statements on different occasions were naturally discredited by the jury.

The judgment clearly should be and must be affirmed, unless some substantial right of the accused has been denied him by the trial court.

(1) There are several assignments of error based upon the contention that the jury was not drawn, selected, constituted and summoned as required by law.

[2, 3] (a) One of these objections is based upon the fact that at the time the list of jurors to be summoned for this case was drawn at the Alleghany court house, the judge was there engaged in the court room holding a special term of court, and the claim is made that it was necessary for him to be personally present at the drawing, which occurred in the clerk's office.

Code, section 4895, provides that such drawing shall be in the presence of the judge of the court, but if he is absent, then the names of those to be summoned may be drawn in the presence of a commissioner in chancery and a reputable citizen, or if the presence of a commissioner cannot be obtained, it may be in the presence of two reputable citizens. The contention is that because the judge was at Alleghany courthouse, in court, therefore it should be held that he was not absent within the meaning of this statute. We decline so to construe it. The jury box and list are in the cus-

tody of the clerk in the clerk's office, and unless the
judge's actual presence in the clerk's office can be secured,
he is absent within the meaning of this statute. When
he is presiding in court, though in the same county,
he is absent performing a conflicting duty, one which
he only at the time can perform, and the other pro-
visions of the statute for the drawing of juries became
operative. So there was no irregularity.

[4] (b) It further appears that this regular *venire
facias* was exhausted, and so it became necessary to
obtain additional jurors duly qualified and free from
legal exception for the trial of this case, and such
additional jurors were obtained from a list of talesmen
summoned under a *venire facias* which had been issued,
returnable to the same term of court, for the trial of
Walter Tinsley, who was also charged with a felony.
That this is expressly authorized by Code, section 4895,
is shown by that clause which provides that at one
term of the court only one jury shall be summoned,
unless the court or judge thereof otherwise direct, and
the jury so summoned may be used for the trial of
both felonies and misdemeanors. Two *venires* had
been issued for the trial of felony cases at that term,
and even without the clause of the statute to which we
will hereafter refer, the action of the court furnishes
no ground for reversal.

[5] (c) After the exhaustion of these *venires*, the
panel was still incomplete, and so it was necessary to
summon more jurors. It is complained that in getting
these additional jurors the judge selected them from
the names on the list provided for by statute, instead of
having these additional names drawn by lot from the
box. This was not an irregularity, but done strictly
in accordance with Code, section 4896.

[6] Reverting to all three of these alleged irregulari-

ties, we think it only necessary to again refer to the statute, and to cite the two latest cases which have ·constrrued it.    The statute, Code, sec. 4895, provides: "No irregularity in any writ of *venire facias* or in the ·drawing, summoning, returning or impanelling of jurors, or in making out or copying or signing or failing to sign the list, or in drawing more persons than four in excess of the number to be summoned, shall be ·cause for summoning a new panel or for setting aside a verdict or granting a new trial, unless objection· thereto specifically pointed out, was made before the jury was sworn, and unless it appears that such irregularity, or error, or failure, was intentional or such as to probably cause injustice to the Commonwealth or to the accused;    *    *    ."

We have construed this statute in *Jarrell* v. *Com-·monwealth*, 132 Va. 551, 110 S. E. 430, and *Wallen* v. *Commonwealth*, 134 Va. 779, 114 S. E. 786, and held it full effective.    The only reason we have thought it necessary to say anything more about it is to emphasize what we have there said, so as to save the learned ·counsel and ourselves from further repetitions about such objections.    We propose to bear that statute in mind and to require those who rely upon insignificant irregularities to show either abuse of power or some other substantial injustice to the accused.

[7]  (2)  One of the exceptions is to the action of the trial court in permitting the prosecution to prove by the order book of the Circuit Court of Alleghany county that at the October term, 1920, the deceased, McMannaway, presented a certificate showing his appointment as a prohibition inspector to hold his office during the pleasure of the commissioner, showing his qualification as such inspector by taking and signing the oaths prescribed by law.    This exception is not argued,

and the admission of this evidence is so clearly correct that nothing further need be said about it.

[8] Another assignment is based upon a bill of exceptions complaining that the court admitted evidence of statements of the accused heretofore recited, clearly indicating that it was his purpose to resist by violence any attempt of the officers to arrest him for his violations of the prohibition law. The ground seems to be that it violates the rule that evidence of independent unconnected and collateral crimes cannot be introduced to the prejudice of the prisoner charged with a specific crime. The rule is sound, but it is not violated here. The evidence was introduced to show the motive of the accused and to fix the degree of the crime. The homicide was committed by him, indeed this is not denied, and this evidence, while it indicated that he was an habitual law breaker, was not introduced for this purpose, but only for the purpose of showing his motive for the homicide. The trial judge was careful to state the reason for the admission of the evidence and to caution the jury against any misapplication of it. In this connection the judge used this language: That the fact that the accused had liquor and a gun in his car "ought not to be considered by the jury in this case at all, that part of it may go out. The fact that he had liquor in his car and a gun along with it would seem to have nothing to do with this case, but statements made by him as to his attitude toward the people who were enforcing the liquor law are admissible." This ruling is clearly correct. *Walker v. Commonwealth*, 1 Leigh (28 Va.) 574; *Nicholas v. Commonwealth*, 91 Va. 748, 21 S. E. 364; *O'Boyle v. Commonwealth*, 100 Va. 788, 40 S. E. 121.

[9, 10] (3) The accused complains of the instructions. Most of these assignments as to specific in-

structions raise questions which have been so often considered and discussed by the courts that nothing further need be said. The reason for discussion in judicial opinions is to settle questions of doubt, but when the suggested doubts have been resolved further discussion is unnecessary. The only question involved in these instructions to which we think it necessary to refer is raised by the refusal of the court to give several instructions offered for the accused which ignored the established fact that the accused, at the time of the homicide, was resisting legal arrest by the sheriff and the deceased. The court took the view that in seeking to arrest the accused and his companion, the sheriff and the deceased were simply attempting to perform their public duty, and declined to instruct the jury as if the accused had been waylaid by strangers upon the public highway and violently assaulted without explanation, justification, or excuse. In this the court was clearly correct. The officers had the right to stop them upon the highway and to arrest them, and there is not the slightest reason to suppose that they did not recognize these officers, or that they did not intend to evade arrest by violence, and if it became necessary even to kill them. It being true that the warrants had been issued, charging both Scott and the accused with felonies, these officers were under the legal duty to arrest them. *State* v. *Taylor*, 70 Vt. 1, 39 Atl. 447, 42 L. R. A. 673, (note), 67 Am. St. Rep. 648; *Hill* v. *Smith*, 107 Va. 851, 59 S. E. 475; *Williams, etc.* v. *Commonwealth*, 142 Va. 667, 128 S. E. 572.

[11] The court fully protected the rights of the accused on this point by instructions Nos. 34 and 41, which told the jury, in substance, that when an officer attempts to arrest a person charged with a felony and uses more force than is reasonably necessary to make

the arrest, the officer himself becomes a wrongdoer and the person whose arrest is sought, if himself without fault, can resist such excessive force and even kill the officer if necessary to preserve his own life.

[12] The defendant offered forty-two instructions, twenty of which were given.    These twenty presented every other possible phase of the defense to the jury to which the accused was entitled in view of the evidence. They were enough and to spare.    Those which were refused were either erroneous or fully covered by the many which were given.    None of those which were refused present any novel or doubtful question, or require any discussion.

(4) Another assignment of error is based upon this objection, made after verdict, as found in the bill of exceptions:    That the defendant was not present at the time when the instructions asked for by the Commonwealth and the defendant were presented to the judge of the court, nor when the instructions were argued by counsel.    The court certifies the following facts and circumstances attending the offer of instructions, argument of the same and the giving and refusing of said instructions:

"When the evidence was closed in the late afternoon, the prisoner being present, the court asked the question: 'What about instructions, gentlemen?'    The attorney for the Commonwealth said he had several prepared, and produced these; but desired time to prepare others.    Mr. Harvey, of counsel for the prisoner, handed to the judge a large sheaf of instructions, with the suggestion that he and his associate wished to add to, or change some of these.    It being then about four o'clock in the afternoon, the court suggested that court be adjourned until tomorrow; that counsel take all the instructions that had been presented, make such

changes or write such others as they desired, and return to the judge's room adjoining the court room, at five o'clock, with all the instructions, and the judge would consider them. Court was thereupon adjourned, the jury put into the charge of the officers, and the prisoner remanded to jail. At five o'clock counsel on both sides brought to the judge's room and laid on the table before him all the instructions. The prisoner was not present. The judge said he would then hear any objections that either side desired to make in the instructions offered by the other. No objection was made then or later (until after the verdict aforesaid) to the consideration by the judge of and the hearing of objections of counsel to the instructions, or argument of the same in the absence of the accused.

"The judge then took up the instructions with counsel, and they were discussed and argued, pro and con, around the judge's table until about ten o'clock that night (with a recess for supper).

"The next morning before court convened, the judge, with neither the counsel nor the prisoner present, examined the instructions, marked those he approved with the word, 'given,' and those he disapproved with 'the word 'refused.' About ten o'clock that morning court was opened, the prisoner and jury being present, and the judge, with all the instructions before him that had been offered on both sides, stated that he approved those instructions marked 'given' and disapproved those marked 'refused,' and counsel for the prisoner noted exceptions to the giving of instructions offered by the Commonwealth and marked 'given,' and to the refusal of the court to give those instructions offered by the accused and marked 'refused,' but taking no exception at this time to the action of the court in considering the instructions with

counsel the night before in the absence of the prisoner. At this point, the attorney for the Commonwealth asked that certain slight changes be made in several instructions asked for by him and marked 'given,' and these changes being made, the accused, by counsel, again excepted to the giving of these instructions as thus changed. The judge then read to the jury the instructions aforesaid marked 'given,' and handed to the clerk for preservation the instructions marked 'refused.' "

[13] This assignment is based upon the statute (Code, sec. 4894), and the rule, which we believe is almost if not quite universal, that one tried for a felony has the right to be personally present during the trial. It has been frequently said, speaking generally, that courts rigidly enforce the prisoner's right to be present at every stage of the trial from his arraignment to his sentence, when anything is to be done which can affect his interest. Among the more recent cases here are *Fetters* v. *Commonwealth*, 135 Va. 501, 115 S. E. 692; *Noell* v. *Commonwealth*, 135 Va. 600, 115 S. E. 679, 30 A. L. R. 1345; *Pierce* v. *Commonwealth*, 135 Va. 635, 115 S. E. 686, 28 A. L. R. 864. Generally stated, the rule is that he must be present on his arraignment, when any evidence is given or excluded, when the jury is charged, when the trial court wishes to communicate with the jury in answering questions by them, and when the jury receives further instructions. He must be present at every stage of the trial proper.

[14] Tested by these general rules, and according full force and effect to the precedents, we think the trial court correctly overruled the motion. It is clearly shown, among other things, that the court was not in session at the time, but had adjourned until the follow-

ing day. All of the occurrences complained of then happened, not at the trial but during a suspension of the trial. There could be neither trial nor any part of it except when the court was in session, and the trial judge here, during this interregnum, could not and did not do anything whatever which affected the interests of the accused. What the accused was entitled to was to be present when the jury was instructed, not when the trial court judge was considering and preparing the instructions. Considering the prayers for instructions, whether the court is in session or not, and testing the reasons urged therefor either by the attorneys or suggested by the personal investigation of the authorities which the judge may make, is not part of the trial proper before a judge and jury, but is mere preparation for the resumption of such trial. The considering of proposed instructions by a court, if done in the absence of both the jury and the accused (and it should generally be done in the absence of the jury), cannot affect the prisoner's rights in any true sense. This is neither official nor unofficial action, but merely prudent preparation therefor. His rights can only be affected after the trial judge has determined the legal questions so raised and when he communicates the instructions to the jury, or refuses to grant any instructions which are prayed for. This is official action and when any official action is taken in the trial which affects his rights, the accused must be present.

We are told that the practice followed in this case is common practice in this State. Certainly it is not an objectionable practice, and manifestly promotes expedition, certainty and the avoidance of error. In this connection the language of Buchanan, J., in *Barnes v. Commonwealth*, 92 Va. 807, 23 S. E. 788,..

is worthy of repetition: "We think it may be safely said that any practice so salutary and wise and so admirably calculated to protect and insure the rights and interests of both the accused and the Commonwealth in felony cases, and which has been uniformly pursued for a great length of time, ought to be regarded as showing what the law is on the subject."

In *Bowles* v. *Commonwealth*, 103 Va. 816, 833, 48 S. E. 533, this is said: "Presumably, in accordance with the usual practice, instructions are considered by the court in the absence of the jury, and the sole question to be considered by this court, where an instruction has, under those circumstances, been refused, is whether or not the instruction was properly refused."

The diligence of the attorneys for the accused has failed to disclose any precedent which can be cited to sustain their contention, and this too indicates that it has neither legal nor logical support.

[15] Our conclusion then is that the ruling of the trial court is plainly right, and that when the trial of a felony case is temporarily suspended in order that the judge may investigate legal questions presented by the instructions which are tendered, this is no part of that trial before a jury at which the presence of the accused is necessary. His presence, however, is necessary when the trial proper has been resumed, when the trial judge has reached his conclusions and is about to communicate the instructions to the jury. When this occurs, the trial is resumed, but the interval has been devoted, not to the trial, but to preparing for the trial. There is no inconsistency between this conclusion and any other case in this jurisdiction or elsewhere, so far as we are advised. The most recent case to which our attention has been called is *Staples* v. *Commonwealth*, 140 Va. 583, 125 S. E. 319, where it is held that per-

mitting the argument of a motion in arrest of judgment without the presence of the accused is error. There, of course, the court was in session and actually rendered a judgment and entered an order which affected the interests of the accused. Here the court, in the interval, entered no order and pronounced no judgment in the absence of the accused, but when after proper investigation the judge was prepared to charge the jury, then his interests were about to be affected, but when that time arrived and the court resumed its session the accused was present.

We will, therefore, affirm the judgment.

*Affirmed.*