# �export 𝔯𝔦𝔠𝔥𝔪𝔬𝔫𝔡

RICHARD JAMES LLOYD v. COMMONWEALTH OF VIRGINIA.

November 25, 1946.

Record No. 3131.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and
Buchanan, JJ.

The opinion states the case.

*James S. Easley,* for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *Walter E. Rogers, Assistant Attorney General,* for the Commonwealth.

HOLT, C. J., delivered the opinion of the court.

In Halifax county in the afternoon of September 6, 1945, Richard James Lloyd, the petitioner here, stabbed and killed Robert Lee Cook; the time was seven-thirty, and it was still light. Lloyd was indicted for murder and tried by a jury which found him guilty of murder in the second degree and fixed his punishment at ten years in the State penitentiary. That verdict was approved by the presiding judge, and it is now before us on a writ of error.

Lloyd at that time was about thirty-three years old, five feet six inches in height, and weighed about 120 pounds. Cook was two or three years older, six feet two inches or more in height, and weighed from 175 to 190 pounds. These two men were first cousins and had theretofore been on friendly terms.

Cook was a tenant farmer and for that year had rented from L. R. Lackey a tobacco farm. He was to furnish team and tools and was to pay by way of rent one fourth of the crops raised there.

Cook, for reasons satisfactory to himself, sublet a part of this Lackey farm to Lloyd, who was to have one half of the tobacco raised by him. Lloyd then had no team, but preceding this difficulty, he purchased two mules, which he put into a stable on this farm then used by Cook for his own mules. These two men lived in cabins about seventy-five yards apart.

On the afternoon of September 6th, Lloyd went to the stable and found some of his feed missing. With oaths he charged Cook with having stolen this missing feed. These charges were heard by Cook's daughter, Maud, and Jean Wagstaff, a girl then at the Cook home. When Cook came home, he was told of what had happened. He then went to the Lloyd home, but Lloyd was not there, having gone hunting. He told Mrs. Lloyd that Lloyd had accused him of stealing feed and to tell him to take his mules out of the stable. Upon Lloyd's return, his wife told him what had happened. He then started towards the stable for the purpose of taking his mules out, and his wife went with him. Cook came down and met him. As they approached each other, Lloyd, who had on his overalls, had both hands stuck behind his overall bib. Cook asked him why he had been cursing him and charging him with stealing his feed. This charge Cook denied. It was then that Lloyd struck Cook with his fist.

In the fight which followed, Mrs. Lloyd ran behind Cook and caught hold of both Cook's arms at or below the elbows. Lloyd said at that time Cook was trying to choke him. From somewhere about his person he produced his pocket knife and cut Cook fourteen times. Cook was cut about the shoulders, arms and hands, and the ball of one thumb was cut off. Most of these were shallow cuts, but one of them pierced Cook's heart, from which he died in a few moments.

This difficulty grew out of the charge of theft which Lloyd had made against Cook. It was a charge renewed when these two men met and was denied by Cook. It was then that Lloyd struck Cook. In short, Lloyd, with oaths, made the first charge of theft and later struck the first blow.

If we are permitted to speculate, it is probable that Lloyd used his pocket knife because he recognized the fact that he was physically inferior to Cook.

The principle applied in *Richardson* v. *Commonwealth*, 128 Va. 691, 695, 104 S. E. 788, 790, and in other cases

has no application here. There was no sudden quarrel, and no killing in hot blood.

In *Murphy* v. *Commonwealth*, 23 Gratt. (64 Va.) 960, decided in March, 1873, it was said:

"The court further instructs the jury, that the law is that malice may be implied from the deliberate use of a deadly weapon in the absence of proof to the contrary."

In *Sims* v. *Commonwealth* (1922), 134 Va. 736, 115 S. E. 382, this instruction was given and approved:

"Every homicide is presumed to be murder in the second degree and the burden of proving the elements necessary to elevate the crime to murder in the first degree is upon the Commonwealth, but on the other hand, in order to reduce the offense from murder in the second degree to manslaughter or excusable homicide, the burden is upon the prisoner."

These propositions were challenged in *Adams* v. *Commonwealth*, 163 Va. 1053, 178 S. E. 29, but were sustained by Chief Justice Campbell, who, quoting from Judge Burks, said that they were "hoary with age" and are no longer to be challenged.

In the *Adams Case*, as in this, a pocket knife was the weapon used.

This case is to be distinguished from *Coleman* v. *Commonwealth*, 184 Va. 197, 35 S. E. (2d) 96. There the deceased was the aggressor, and the provocation was great.

In the instant case, death was inflicted by Lloyd with a deadly weapon. There is a *prima facie* presumption that it was murder in the second degree. The burden of overcoming that presumption rests upon Lloyd and has not been met.

For the Commonwealth ten instructions were given. A detailed examination of them would be unfruitful. In the main, those for the defendant deal with the proposition that malice had not been shown and that instructions dealing with murder should not have been given. Those matters we have already dealt with.

This instruction was tendered on behalf of the accused:

"The court instructs the jury that the testimony of George Keck and Gilbert Jones is stricken from the record in this case and in reaching their verdict they must not consider this testimony."

It was given with this addition by the court:

"Except insofar as it affects the credibility of the evidence of the accused."

Lloyd, on cross-examination, was asked:

"I want to ask you if you didn't last year, about planting tobacco time, tell Mr. Gilbert Jones and Mr. Keck you were going to kill Mr. Cook?"

He answered: "No, sir."

This appears in Jones' examination:

"Q. I will ask you whether or not last spring at planting tobacco time you heard Mr. Lloyd make any threat with reference to Mr. Eddie Cook.

"A. I did.

"Q. Tell the jury what statement was made.

"A. I went over to Mr. Lloyd's fish trap down the river. He told me to come down and get some fish. We went down and there wasn't many fish in the trap. He said Mr. Cook had stolen the fish and he wished he could have been there with the shotgun so he could fill him full of buckshot. Mr. Keck was with us. He said, 'Mr. Lloyd, you wouldn't kill a man for a few fish.' He said, 'Yes, I'd blow his heart out on the ground.'"

In *O'Boyle v. Commonwealth*, 100 Va. 785, 40 S. E. 121, we cited this with approval from 3 Russel on Crimes (9th Ed.) 288:

"On the trial of an indictment for murder, former grudges and antecedent menaces are admitted to be given in evidence as proof of the prisoner's malice against the deceased."

See also, *Maxwell v. Commonwealth*, 167 Va. 490, 187 S. E. 506, where many authorities are cited to sustain the admissibility of antecedent threats.

We find no error in the record, and the judgment of the trial court is affirmed.

*Affirmed.*