# Richmond

STANCIL WILLIAMS v. COMMONWEALTH OF VIRGINIA.

October 8, 1962.

Record No. 5448.

Present, All the Justices.

*William H. Oast, Jr.,* for the plaintiff in error.

*Francis C. Lee, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

Stancil Williams was indicted for the murder of his wife, Cora Lee Williams, tried by a jury and convicted. His punishment was fixed at death in the electric chair. The court approved the verdict of the jury and sentenced the accused to be put to death by electrocution. The judgment of the court is the subject of this writ of error.

The material facts show that on the night of December 3, 1960, Cora Lee Williams left her home in Norfolk county in the company

of one Eugene Ross, and drove to her sister's home to visit her father. She returned between 10:15 p.m. and 12:30 a.m. At some time between her return home and 1:15 a.m. (the time of the arrival of the State Police) Williams assaulted his wife with an axe, from which attack she died on the morning of December 4, 1960.

It is disclosed that Williams was 56 years of age and weighed 207 pounds. His wife was 43 years of age and weighed 125 pounds. The assault took place in the presence of the children of the parties, and was committed with such savagery that bones were broken throughout the victim's body. The medical evidence discloses that death was due to the multiple injuries received.

Ivory Williams, an eleven-year-old son, testified to the brutal assault made by his father upon his mother with the axe.

State Trooper Almond testified that he and Trooper Marr had been called to the Williams residence; that they arrived there at approximately 1:15 on the morning of December 4, where they found a quantity of blood over the floor and the accused and his wife in bed, "his wife was on the left hand side and he was on the right side, laying on her right arm and leg;" that an ambulance was called and the wife was taken to the Community Hospital where she died soon thereafter.

The trooper said that the accused admitted that he had had a fight with his wife and had hit her with the axe; that after he was advised of his rights Williams gave him a signed statement in which he admitted that the argument started over his wife going out with Eugene Ross and that he knocked her down "and struck her three or four times with the blunt end of the axe."

Williams took the stand in his own behalf and more or less reiterated what he had said in his signed statement. On direct examination he concluded, "me and her were fighting and got down in the floor and that is when I picked up the axe and hit her two or three times with the axe. We were scrambling in the floor 15 or 20 minutes."

It is obvious from the medical testimony and the testimony of Ivory Williams that the wife was struck more than "two or three times", as her head was crushed and legs and arms broken by the blows.

On cross-examination the court permitted the Commonwealth's attorney, over the vigorous objection of counsel for the accused, to examine him regarding a previous attack upon his wife and his conviction for such attack.

While several assignments of error were recorded, the only one treated in the brief of the accused and in argument before us was—

did the trial court err in allowing the accused to be cross-examined regarding the previous attack upon his wife and his conviction for a felony.

The record discloses that prior to the trial and out of the presence of the jury, the court; Mr. Axson, Commonwealth's attorney; Mr. Oast, attorney for the accused; and the accused, appeared in chambers where the following took place:

"Mr. Axson: Your Honor, this is in the nature of a pretrial conference. I plan to put on evidence to show the defendant attacked the deceased on two other occasions and that he was convicted of assault. My purpose for putting this in is not for the purpose of convicting him in this case but to show on two other occasions he attacked this woman with the same instrument he had in this instance.

"Mr. Oast: We are going to object to that. We don't know when it was. If it is true she was attacked, if there be such cases, such attempts to kill her, she went back to him and they lived together and were living together at the time of this.

"The Court: Has the Rasnake case [*Rasnake* v. *Commonwealth,* 135 Va. 677, 115 S. E. 543] ever been overruled?

"Mr. Axson: No, sir. The court held it was admissible to show the attitude of the accused. * * * What I want to show is that his motive for killing her was because she had been out and came in later than he expected, and that he attacked her a couple of times with an axe before. I want to show he had previously struck her with an axe and was convicted in this Court, but given probation, and after he got probation he violated it by doing the same thing with an axe. His sentence was revoked, and when he got out of the penitentiary he came back and killed her.

"Mr. Oast: He was indicted for maiming and she went back and they lived together and were living together at the time of this. She could have divorced him or left him. You can have malice in a split second. I think the primary purpose in getting this in is to inflame the jury.

"Mr. Axson: On one occasion he beat her with a stove poker.

"The Court: How long had he been back from the penitentiary?

"Mr. Axson [addressing the accused]: When did you get out of the penitentiary?

"The Defendant: The 27th day of August, 1959.

* * *

"The Court: We will pass on that [evidence] as it comes up."

In the course of the trial, on cross-examination, the Commonwealth's attorney asked the accused:

"Q. You had beaten her before, hadn't you?

"Mr. Oast: I object to that.

"Mr. Axson: I can show intent.

"The Court: The defendant has testified that the reason for his committing this assault which resulted in her death was the fact that she went out that night. I think the Commonwealth has a right to show other instances in order to show intent, and that he beat her on this occasion.

"Mr. Oast: We object and save the point.

"Mr. Axson: You had beaten her before this?

"Mr. Oast: We object.

"The Court: I overrule the objection.

"Mr. Oast: I save the point.

"By Mr. Axson:

"Q. You had beaten her before?

"A. Yes, sir.

"Q. Have you ever been convicted of a felony?

"A. Yes."

The record discloses that at no time had the accused put his character in issue. We hold that the admission of this evidence of a prior beating was error and was highly prejudicial. There was no evidence as to when the prior beating occurred, or why or how it was done. The purpose of introducing it was to persuade the jury that the beating for which the accused was being tried was a deliberate and premeditated killing, and hence murder in the first degree. The fact that he had beaten her at some pervious time without any evidence as to the circumstances or the character or effect of it, furnishes no proof that he willfully, deliberately and premediatedly killed her on this occasion. The only purpose it could serve, and the only effect it would have, was to prejudice the accused in the minds of the jury. The Commonwealth's attorney's statement in chambers indicated that the accused was punished for the prior beating. If so, it should not serve as a basis for additional punishment in this case.

A reading of the *Rasnake* case relied upon shows that it has no application here. In the instant case the accused was on trial for murder. He had unmercifully assaulted has wife, inflicting wounds over her body by the use of a deadly weapon from which intent to kill could be presumed.

It is a well established common law rule that in a criminal prosecu-

tion, proof which shows or tends to show that the accused is guilty of the commission of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is incompetent and inadmissible for the purpose of showing the commission of the particular crime charged. In other words, it is not competent to prove that the accused committed other crimes of a like nature for the purpose of showing that he would be likely to commit the crime charged in the indictment. Ordinarily such proof does not reflect any light upon the special crime with which the accused stands charged. 20 Am.Jur., Evidence, § 309, page 287 *ff.*

The tendency of such evidence to inflame and prejudice the jury outweighs its evidentiary value. The accused is entitled to be tried on the accusation made in the indictment pending against him and not on some collateral charge which is not in issue and which he is not prepared to answer. This is no mere technical rule of law. It arises out of a fundamental demand for justice and fairness. 22A C.J.S., Criminal Law, § 682, page 729 *ff.*

Such has always been the rule in Virginia. 7 Mich. Jur., Evidence, § 48, page 390 *ff.*; *Barber* v. *Commonwealth*, 182 Va. 858, 866, 30 S. E. 2d 565, 569; *Zirkle* v. *Commonwealth*, 189 Va. 862, 874, 55 S. E. 2d 24, 31, (and cases and authorities there cited).

In *Day* v. *Commonwealth*, 196 Va. 907, 914, 86 S. E. 2d 23, 26, a conviction for rape was reversed because of the admission of evidence of a prior offense for the purpose of showing the accused's state of mind to molest women. There it was said:

"The accepted rule to be derived from the cases is that evidence which shows or tends to show the accused guilty of the commission of other offenses at other times is inadmissible if its only relevancy is to show the character of the accused or his disposition to commit an offense similar to that charged; but if such evidence tends to prove any other relevant fact of the offense charged, and is otherwise admissible, it will not be excluded merely because it also shows him to have been guilty of another crime."

While there are limited exceptions to the general rule as pointed out by Chief Justice Eggleston in *McWhorter* v. *Commonwealth*, 191 Va. 857, 870, 63 S. E. 2d 20, 26, no such exceptions are here involved. *Fleenor* v. *Commonwealth*, 200 Va. 270, 274, 275, 105 S. E. 2d 160, 163. See also *Roy* v. *Commonwealth*, 191 Va. 722, 726, 62 S. E. 2d 902, 903.

Here the defendant did not deny that he killed his wife by hitting her with an axe. That fact was not in issue. The only issue in the

case was whether he acted willfully, deliberately and with premeditation. Evidence that he had previously beaten her, without more, did not tend to establish that he deliberately and premeditatedly killed her on this occasion.

"The intent with which an act is done, is to be known from the circumstances which precede, accompany, or follow, the act: that intent may be generally ascertained with great correctness, from the conduct of the prisoner on the particular occasion, and from the circumstances connected with the act proved to have been committed. This is the legitimate source from which to draw information of the *quo animo.* \* \* \*." *Walker* v. *The Commonwealth*, 1 Leigh (28 Va.) 574, 577.

For the reasons stated the judgment is reversed, the verdict of the jury set aside, and the case remanded for a new trial.

*Reversed and remanded.*

SPRATLEY and I'ANSON, JJ., concurring.

EGGLESTON, C. J., SNEAD and CARRICO, JJ., dissenting.

SPRATLEY, and I'ANSON, JJ., concurring.

We agree that there is ample evidence, excluding that relating to the previous assault of the accused upon his wife, to justify a verdict of murder in the first degree; but because that is true we should not be in a race with the executioner to provide a short cut to the death chamber.

The guilt or innocence of the accused is not the issue before us. The issue here is whether or not he has had a fair and impartial trial according to the law. We do not think he has had such a trial, because of the failure of the trial court to instruct the jury that evidence of the accused's prior attack upon his wife could be considered only to show his motive or intent in making the murderous assault of December 4, 1960.

It has been the long established rule in Virginia that in the trial of a criminal case, the Commonwealth may not generally offer testimony of a prior independent crime. That rule has been subject to certain exceptions, one of which is that such testimony may be admissible to show the motive or intent, which is connected with, or leads up to the offense for which the accused is on trial. *Colvin* v. *Common-*

*wealth*, 147 Va. 663, 669, 137 S. E. 476; *Webb* v. *Commonwealth*, 154 Va. 866, 874, 152 S. E. 366; *Boyd* v. *Commonwealth*, 156 Va. 934, 944, 157 S. E. 546; *Zirkle* v. *Commonwealth*, 189 Va. 862, 872, 55 S. E. 2d 24; Nash, The Law of Evidence, Virginia and West Virginia, § 88.

The prior attack of the accused upon his wife was a separate and distinct offense, wholly unconnected with that for which he was on trial. It was not admissible for the purpose of determining whether or not he committed the offense for which he was being tried; but was allowed to be introduced, as the Commonwealth's Attorney and the trial judge agreed, for the sole purpose of determining the motive or intent of the accused in committing the offense for which he was on trial. But the Commonwealth offered no instruction, and the court gave none, limiting the jury in its consideration of the proof. The accused offered no such instruction; but both at the pre-trial conference and during the trial, he objected and excepted to the admission of the evidence for any purpose. This of itself was sufficient to warrant the trial court in properly instructing the jury. As we see it, the admission of such evidence, in the absence of a limiting instruction to the jury, was prejudicial to the accused.

A failure to emphasize the point here sought to be made will lead to confusion in the trial of criminal offenses in Virginia. While the error may be termed technical, it is too important to go unnoticed.

For these additional reasons, we think that the judgment of the trial court should be reversed, and a new trial granted the accused.

EGGLESTON, C. J., dissenting.

I dissent. The uncontradicted evidence is that the accused assaulted his wife, knocked her to the floor with his fists, and while she was lying there, beat her with an ax so severely that she died shortly thereafter. The assault took place in the presence of the children of the couple and was committed with such savagery that bones were broken throughout the victim's body.

There were no extenuating circumstances, and the verdict of the jury convicting the accused of murder in the first degree is the only just verdict which could have been reached. It is entirely unrealistic to say that under these circumstances the jury may have been influenced by evidence that the accused had previously assaulted his wife.

Moreover, I fully agree with the conclusion of Justice Carrico, ex-

pressed in his dissent, that there was no technical error in the admission of the evidence of the accused's previous assault on his wife.

I would affirm the judgment.

Justices Snead and Carrico join in this dissent.

CARRICO, J., dissenting.

Although I hold the greatest respect for the views of the members of the majority, I cannot, upon this occasion, conform my judgment to theirs, and am, therefore, constrained to dissent.

I am compelled to this course for two reasons:

First, the decision that has been reached reverses the conviction of a defendant who has had a fair trial, whose guilt is beyond question and whose punishment, fixed by an impartial jury and approved and imposed by an able trial judge, is appropriate to the crime he has committed.

But the other, and more impelling, reason for my deep concern is that the majority opinion reverses prior decisions of this Court, decisions upon which the bench and bar have relied for so many years that the rules and principles therein enunciated have become imbedded in our system of criminal jurisprudence. They ought not now to be disturbed.

The majority opinion holds that it is improper to admit, in a prosecution for murder, evidence of prior assaults by the accused upon his victim. It is stated that this finding is based upon the rule that, "It is not competent to prove that the accused committed other crimes of a like nature for the purpose of showing that he would be likely to commit the crime charged in the indictment."

I take no issue with this general rule. It, too, is an ingrained part of our criminal law, and I would scrupulously avoid diminishing its effectiveness. It is the failure of the majority opinion to recognize the exceptions to the general rule with which I take issue.

We have always, in our decisions, recognized and applied these exceptions. The result reached today will overturn those decisions.

Evidence of other, although similar, offenses should be excluded if it is offered merely for the purpose of showing that the accused was *likely* to commit the crime charged in the indictment. But it should be admitted if it shows the conduct and feelings of the accused toward his victim, if it establishes their prior relations, or if it tends to prove any relevant element of the offense charged. 7 Mich. Jur.,

Evidence, § 48, pp. 390, 392, 393; 9 Mich. Jur., Homicide, § 67, p. 407.

In a charge of murder, malice, motive and intent are most relevant matters for the consideration of the jury. In the case before us, their existence was a crucial issue. The evidence of the prior assaults by the defendant upon his wife was pertinent, material and proper to show their existence.

This Court, on December 5, 1901, decided the case of *O'Boyle* v. *Commonwealth*, 100 Va. 785, 40 S. E. 121. By the mere substitution of the name of the present defendant in the place of the name of O'Boyle, we surely decided, more than sixty years ago, the case now before us.

O'Boyle was indicted and tried for the murder of the woman with whom he had lived, prior to the killing, as man and wife. He was convicted of murder in the first degree and sentenced to be hanged.

A witness, *introduced by the Commonwealth*, was asked:

"Did they ever have any difficulty before (meaning the deceased and the prisoner at the bar), and what were (sic) the nature of those difficulties, if they had any?"

Over the objections of the defendant, the witness was permitted to testify:

"Yes, sir; I saw them have a difficulty a good while before this. He kicked her and beat her once when she lived at my sister's house last year."

After a careful and exhaustive survey and discussion of the authorities on the subject, the evidence was held to have been properly admitted, and Judge Keith, then President, speaking for the Court, said:

"The evidence objected to was not admitted as tending to prove the perpetration of the crime with which the prisoner was charged, but for the purpose of showing the relations between the parties, their state of feeling and course of conduct towards each other, and as reflecting light upon the motive and intent with which the act was done. Nor is the admissibility of such testimony to be determined by the length of time which intervened between the threat or act proved, evidence of which is introduced, and the homicide under investigation, but the effect to be attributed to it by the jury will be in proportion to its closeness in point of time, and the directness of its association with the principal fact under consideration." 100 Va., at p. 792.

. . . . . . . .

"In 3 Russel on Crimes (9th ed.) 288, it is said:

" 'On the trial of an indictment for murder, former grudges and antecedent menaces are admitted to be given in evidence as proof of the prisoner's malice against the deceased.' " 100 Va., at p. 791.

There is more compelling reason for the admission of the evidence in the case before us than was true in the *O'Boyle* case. As has been noted, in the *O'Boyle* case, the evidence was introduced through an independent witness, placed on the stand by the Commonwealth. Here, the evidence was elicited from the defendant, himself, on cross-examination, after he had attempted, while testifying in his own defense on direct examination, to negate malice toward his wife and to suggest a possible plea of self-defense.

The defendant in his direct testimony, told the jury that it was the fact that his wife had been in the company of another man for four hours that caused the trouble between them which resulted in her death.

He also said, "Me *and her* was fighting," and when asked by his counsel, "Did she hit you?", he replied, "Yes," without any explanation as to whether she had struck him first or whether she had struck him with the axe.

Thus, it was the defendant who put in issue the presence, or the lack, of malice, the motive for the killing and his prior relationship with his wife. It was pertinent and proper for the Commonwealth's Attorney to question the defendant about his prior conduct toward his wife to rebut his direct testimony. *Smith* v. *Commonwealth*, 185 Va. 800, 822, 40 S. E. 2d 273.

But the *O'Boyle* case is not the first, or only, time that we have recognized the admissibility of such evidence under circumstances similar to those in the case at bar.

In *Taylor* v. *Commonwealth*, 90 Va. 109, 113, 17 S. E. 812, we said:

. . . . . "The fact that Ira Mullins' [the victim] house and bed in which he was lying was fired into about three weeks before the killing, was important, material and proper evidence in view of the testimony of sundry witnesses that the prisoner, over and over again, mentioned it in a way showing that he had done it himself or had procured it to be done."

In *Nicholas* v. *Commonwealth*, 91 Va. 741, 748, 21 S. E. 364, it is said:

. . . . . "In cases of homicide it has always been competent to show the conduct and the feelings of the prisoner towards his victim, and proof

that he made previous threats, or attempts to kill his victim has always been received."

We have followed, and never overruled, the principles laid down in *O'Boyle* v. *Commonwealth, supra,* in cases involving indictments for murder or assault. *Lloyd* v. *Commonwealth,* 185 Va. 674, 40 S. E. 2d 258; *Evans* v. *Commonwealth,* 161 Va. 992, 170 S. E. 756; *Webb* v. *Commonwealth,* 154 Va. 866, 152 S. E. 366; *Colvin* v. *Commonwealth,* 147 Va. 663, 137 S. E. 476; *Palmer* v. *Commonwealth,* 143 Va. 592, 130 S. E. 398; *Hardy* v. *Commonwealth,* 110 Va. 910, 67 S. E. 522.

In *Palmer* v. *Commonwealth, supra,* 143 Va., at p. 601, we approved the admission of evidence of statements made by the defendant prior to his killing the victim, although such testimony proved the commission of another crime, "to show the motive of the accused *and to fix the degree of the crime.*" [Emphasis added].

In *Webb* v. *Commonwealth, supra,* 154 Va., at pp. 872, 873, evidence of illicit relations between the defendant and the wife of the deceased was held to have been properly admitted, although proving another crime, "to show . . . . malice and intent. . . ."

The bench and bar of Virginia are not alone in relying, since the turn of the century, upon our holding in the *O'Boyle* case. The courts of several of our sister states have cited the case, with approval, in dealing with the question of the admissibility of similar evidence:

In *State* v. *Richardson,* 197 Wash. 157, 84 P. 2d 699, evidence of prior offenses, ranging far beyond that admitted in the case before us, was held to be competent to show motive for the killing.

In *Dietz* v. *State,* 149 Wis. 462, 136 N. W. 166, Ann. Cas. 1913 C, 732, the defendant killed a deputy sheriff while resisting arrest. Evidence of his having resisted arrest on numerous occasions, dating as far back as seven years prior to the murder, was held to have been properly admitted to show intent or state of mind.

In *State* v. *Long,* 88 W. Va. 669, 108 S. E. 279, the *O'Boyle* case is cited as authority for the admission of evidence, offered by the defendant and refused by the trial court, that the accused and the deceased had a drink of whiskey together the day before the killing, during Prohibition days. The court said such evidence was admissible to show a friendly feeling between the parties, and that, "The question of enmity or friendship existing between the parties prior to a homicide is admissible to show the mental attitude of each toward the other."

In contrast to the holding in the West Virginia case, last cited, the rule laid down by the majority opinion, in the case before us, would

force the Commonwealth to accept a defendant, on trial for the murder of his wife, as a stranger to his victim, and she to him. While the defendant could, unquestionably, show that his married life was harmonious, if such were the case, so as to negate malice, motive and intent, the Commonwealth, on the other hand, could not show the contrary, if such were the case, to prove the existence of malice, motive and intent.

The general rule, as well as the exceptions to it, have evolved through long judicial experience as protection, both to the prosecution and to the accused. To be effective, neither the rule nor the exceptions should be applied for or against the one party but not the other. Their effect should fall upon each with the same favor or adverse force.

I do not urge adherence to a rule that places Virginia with a minority of jurisdictions in this respect. As was said in *Colvin* v. *Commonwealth, supra,* 147 Va., at p. 669, "The exception to the rule is as well established as the rule itself." And it is almost universally so held.

In 20 Am. Jur., Evidence, § 310, p. 289, it is stated:

"It is not to be inferred from the [general] rule stated above regarding the inadmissibility of proof of other crimes or offenses that the admission of evidence which shows or attempts to show the commission of an offense other than the particular one with which the accused is charged must be excluded in all cases and under all circumstances. There are, on the contrary, several well-recognized exceptions to and limitations upon the general rule stated. Evidence of other crimes is always admissible when such evidence tends directly to establish the particular crime, and it is usually competent to prove the motive, the intent, . . . . . . . ."

In 22 C.J.S., Criminal Law, § 686, p. 1100 ff., it is said:

"*As a general rule,* evidence of other offenses committed or attempted by accused *is admissible to show,* or when it tends to show, his criminal intent or purpose with respect to the offense charged, as tending to show his guilt thereof, and proper evidence which proves or tends to prove the particular intent is not to be excluded because it incidentally discloses the commission of an independent crime by accused, or an attempt or threat to commit one." [Emphasis added].

The majority opinion seems to suggest, without so holding, that the disputed evidence was improperly admitted because there was no evidence as to when the prior beating occurred, or why or how it was done.

The *O'Boyle* case, *supra,* has laid at rest any question concerning

the *admissibility* of such evidence insofar as the relationship of time between the prior offense and the charge under trial is concerned. Such difference in time relates only to the weight to be afforded such evidence, which is for the jury to determine. There is no issue before us concerning the weight to be given the evidence in question. The defendant makes no contention, in his brief, that the evidence was inadmissible because the time relationship was not shown.

The defendant can hardly complain that the Commonwealth did not show why or how he had previously beaten his wife. The defendant was benefitted, rather than prejudiced, by the failure of the Commonwealth to show why or how the earlier beating was administered. As the statements made at the pre-trial conference show, the defendant had previously beaten his wife with an axe. The withholding, by the Commonwealth, of such evidence from the jury was in the defendant's favor.

The majority opinion also seems to suggest, without so holding, that the conviction must be reversed because the Commonwealth's Attorney was permitted to ask the defendant, on cross-examination, whether or not he had previously been convicted of a felony. If such be the purpose of the majority, two things must stand in the way.

First, there was no objection made, when the question was asked; no ruling of the trial court was requested and, obviously, no ruling was made; no exception appears, in the record, to the question or the answer.

Section, § 19.1-265 of the Code provides:

"Conviction of felony or perjury shall not render the convict incompetent to testify, but the fact of conviction may be shown in evidence to affect his credit." *Hicks* v. *Commonwealth,* 157 Va. 939, 947, 161 S. E. 919.

This Court recognizes no equal in its determination and zeal to protect the innocent or in its devoted purpose to afford each accused all that the law requires by way of a fair trial. We would hasten to throw a cloak of protection around anyone accused of crime, to insure him due process of law. But our efforts should never go to the extreme of placing about him a cloak of immunity, when such is not his due.

I would affirm the conviction.

EGGLESTON, C.J., and SNEAD, J., join in this dissent.