GILMER, J.
This is a bill to perpetuate testimony, and I have rarely examined a question in which I have found more diffi-cultjT in arriving at a satisfactory conclusion, owing (no doubt) in some measure to the fact, that it is a proceeding not very often resorted to here; very different in some respects from the ordinary proceeding by bill in chancery; and in making the various changes in our chancery practice from that of England, which was formerly ours, the Legislature seems to have had an eye only to the ordinary proceedings, and to have lost sight entirely of this.
These remarks apply particularly to the various modifications, whch have been made from time to time in the law with respect to commissions to take depositions *in chancery cases. The first question to be decided is — What are the functions and duties of a court in which a bill to perpetuate testimony is filed? Even upon this subject I have found the books far from being satisfactory. It seems, however, that they are these: first, *487 to see that a proper case is made out by the bill; secondly, to make an order, or to issue a commission, to authorize the plaintiff, to take his depositions, (for I incline to think, that under our practice, before the new Code, either would be sufficient) ; and, lastly, after the depositions have been taken in pursuance of such order or commission, to make another order perpetuating' them — and then the cause in that court is ended.
If this be so, it follows, that it will be unnecessary to decide many of the questions argued with much earnestness and learning by the counsel on both sides, more especially as the questions raised are of no practical importance since the radical changes in the law made by the Code of 1849. It is equally apparent from what has been already said, that the decree of the Circuit Court cannot be sustained, for the plaintiff in that court not only failed to get either an order or a commission to authorize the taking of her depositions, but actually took them before she filed her bill. For these reasons, therefore, and for these ' only, because the depositions were taken before the bill was filed and without any order of the court, or commission, I am for reversing the decree and dismissing the bill.
TYEER, J.
I deem it a fruitless task, to investigate and pass upon the various questions, which have been so elaborately discussed, in this cause, as in my opinion it is wholly unnecessary to do so, with a view to its decision. The bill in this case was filed to perpetuate testimony, on the ground that the facts to which the testimony of the witnesses proposed to be examined relate, could be immediately investigated in court, the complainant being a legatee in remainder; and if *'the proceedings in the cause have been so erroneously taken, as to forbid the court below from pronouncing a decree to perpetuate the testimony, there is an end to the question, and the decree must be reversed. This, I think, is manifest. In Story’s Equity Pleadings, and in all the other books of Equity Pleading, it is said that the prayer of the bill requires attention, that it must pray leave to examine witnesses; and in Beames’ Chancery Order, page 32, it is said, witnesses cannot be examined “in perpetuam rei memoriam,” until after bill filed, and the defendant or his attorney is made acquainted with the names of the witnesses that the plaintiff would have examined. In this case, the witnesses were examined, not only without leave of the court, and without the defendant or his attorney being made acquainted with the names of the witnesses, but before any bill was filed, praying leave of the court to examine them; and this proceeding is attempted to be justified, because by the act of 1828, parties in chancery suits are allowed to take depositions to be read in the cause without commission. By referring to the act of 1826, which has been amended and in part repealed b3r the act of 1828, it will be seen, that by that act a party in a chancery suit could not proceed to take depositions under a commission until after his bill was filed, and that the act of 1828 only repealed or modified so much of the act of 1826, as required depositions in chancery suits to be taken by virtue of commissions, and permitted the parties in a chancery suit to take depositions in the State, without commission, to be read in the cause; but it did not repeal that portion of the act of 1826, which required a bill to be filed before depositions could be taken at all. Further, the law of 1828 only dispensed with a commission in reference to depositions taken in the State, to be read in the cause, leaving it still incumbent on a party to a chancery cause, who desired to take testimony out of the State, or testimony “in perpetuam rei memoriam,” (which is not to be read in the cause,) to take such testimony by ^virtue of a commission; for, it is only under the commission which issues for the plaintiff in a suit to perpetuate testimony, that the defendant can take testimony. If, therefore, the plaintiff does not proceed to take testimony, the defendant cannot; and if the defendant declines to take testimony under the commission, the plaintiff pays the costs of the suit, and if he does take testimony, each part}' pays his own costs.
Without the issuing any commission in the cause, and without any order in the cause in reference to the examination of witnesses, it is brought on for hearing as on a bill praj’ing relief, and this too is error; but if this were the only error, while the bill would be dismissed with costs, it would be dismissed without prejudice to the perpetuation of the testimony. The record, however, is erroneous in many other particulars, which it is unnecessary to notice. I am,therefore, for reversing the decree with costs, and dismissing the bill with costs.
THOMPSON, J.
It is the duty of an appellate court, to make all fair and reasonable intendments and presumptions in every case in favor of the correctness and propriety of the judgments or decrees of inferior courts brought under its review; and on this occasion, from the peculiar character of the proceeding, and the probable consequences of a reversal, I have (I am free to confess,) felt myself strongly inclined and struggling to affirm the decree complained of, if I could arrive at that conclusion and work out that result without any sacrifice of, or departure from, the substantial principles of equity jurisprudence and equity practice; because of the consideration, that a reversal, in most ordinary cases, results, or must be presumed to result, in the attainment of the right of the case between the parties litigant, whilst here it may lead to a failure of justice, by the loss of testimony, which the party taking it will, in the event of a reversal, have made an abortive attempt to perpetuate. But the desire has been vain, and the struggle unavailing.
*488 *1 was prepared to go a great way' in holding, that a literal or very strict conformity with the rules of practice prevailing in the English chancery was not indispensable, and ought not to be exacted of a party plaintiff in bills to perpetuate testimony with us; for, in some respects, it would be impracticable by reason of the difference in our practice from theirs in many particulars — such as, the character of the commission, the publication of testimony, &c., unknown to our practice; and in others, might be well substituted by a different, but analogous -and equivalent or equipollent mode of procedure, not vary'ing in substance, but in mere form only, and accomplishing substantially the same end.
I was prepared to over-rule most of the .objections taken by the demurrer, the overruling of which by the court below,, constituted one of the errors assigned, as well as most of the other grounds or causes of error assigned to .the decree, and in so 'doing to hold: That the plaintiff had a sufficient interest and right to sue, notwithstanding she claimed under a Kentucky will, not recorded in Virginia at the date of the emanation of the subpoena, it having been recorded before bill filed ; and if it had not been recorded then, I should still have held that she had a sufficient interest and right to sue; that sufficient parties defendants were made; that it was no valid and substantial objection, that the bill prayed relief as well as the perpetuation of testimony, because the fair and obvious meaning and intent of that pray'er was the relief contemplated by the statements and whole scope and context of the bill, the perpetuation of testimony; that it was not necessary to allege, that the witnesses were single witnesses to the facts, or were aged and infirm, or about to depart the realm or commonwealth. That Mary Cunningham was a competent witness, and whether so or not, was not a question for the consideration or decision of the Chancery-Court invoked to perpetuate her testimony ; that there was nothing in the objection taken to the form of the decree or order of perpetuation, declaring the testimony ^admissible as evidence in any controversy which might arise between the parties in relation to the same, being of opinion that this was mere surplusage and supererogation, not adding to or detracting froth the legal force and effect of the decree, which was, that it was to be read in the event of the death or disability of the witnesses to testify, subject to all just exceptions for want of notice, incompetency, inadmissibility, or any other cause, like any other depositions taken in chief, to be judged of by the court, when the trial was to be had, and to avail there for as much as they ought to avail, and no more, and no less. Nor am I prepared to say, that the prayer for discovery and for perpetuation of testimony, if to be regarded in the' light of a bill of discovery, technically speaking, rather than the formal prayer of all bills, calling upon the defendan-t to ' answer, were objects so incompatible (like perpetuation and relief,) as to constitute | ground of objection fatal upon demurrer; nor that it was inadmissible, to pray for and take the examinations of witnesses not mentioned by name in the bill, nor that the exceptions to the testimony, taken for insufficiency of notice or other cause, were questions to be addressed to and passed upon by the court invoked to perpetuate them. It would seem to follow, that no such exception could be made in the English Chancery Court, since there the depositions are returned sealed, the court never sees them, and their contents never transpire until the occasion arises for their use, and then, and then only, is the seal of secrecy broken, by publication of the testimony.
As to most of the objections, I have enumerated, and I believe they constitute all assigned for cause, of error in the petition, but one, I have formed a very decided opinion of their invalidity, and am strongly inclined to the opinion, that none of them could be sustained; but having surmounted all these objections, there still remains one, and one only, which, to my mind, is altogether insuperable, and that is, that the depositions which have been perpetuated, were taken before bill *filed, without any commission or decree, or order of court authorizing their taking, and, having .been so taken without authority' and illegally, were afterwards perpetuated, as if taken in chief in pursuance of a previously conferred lawful authority to take them. Grant, for the sake of the argument, that they' might be regarded as taken de bene esse, and entitled quoad hoc to occupy the same ground, as depositions taken de bene esse into, ordinary cases, though taken before bill filed upon the issuing of the subpoena, and without commission as such depositions may now be taken under the Code of 1849, they were still but depositions de bene esse, provisional examinations of the witnesses, and only available in the event of the witnesses dying before the examination in chief, and could not be substituted for the examination in chief, unless the witnesses died before that could be had or taken.
If instead of pursuing the English practice, after the filing of the bill and answer, if taking a commission to examine his witnesses, the plaintiff had procured an interlocutory decree or order, authorizing their examination, and having examined them according to our practice and mode of examination, and had then have obtained of the court the final order of perpetuation of the testimony thus taken in chief, I should have been disposed to regard it as a substantial compliance with the requirements, though different from the mode of proceeding in such cases in England; but instead of that, she has taken her depositions prematurely, and without any authority ; call them, if you please, depositions lawfully taken de bene esse, and that is surely the highest ground they can occupy, *489 she omits to obtain a commission for their examination in chief, or the interlocutory order in lieu of and as the substitute for it, and then without any examination in chief, obtains a final order perpetuating the depositions, thus provisionally taken, that is, taken de bene esse, and in order to sustain so irregular a proceeding, we are asked to regard the order of perpetuation as a nunc pro tunc order for *their taking as well as their perpetuation, and the examination de bene esse, as a nunc pro tunc examination in chief; unless the whole proceeding is an unmeaning form, a judicial farce, I cannot go that far, however much inclined to overlook mere technical and unsubstantial objections, for the purpose of sustaining the decree. I am constrained then to hold, that there has been neither a formal nor a substantial compliance with the requirements in such cases, and that, however disastrous the consequences of a reversal to the plaintiff may be, she must abide them.
The law cited from the Code of 1849, p. 666, 'é 34, authorizing testimony to be taken and perpetuated by a commissioner of the court, without the intervention of a judicial tribunal upon bill and other pleadings and proceedings, can furnish no light to guide us in the decision of this cause. If it even was or professed to be a declaratory law, a legislative declaration of what the law was and always had been, it could not bind the courts, unless they should concur with the Legislature in opinion upon this construction of the law, except as to cases arising subsequently to the enactment. But in truth the law had no such object or purpose. The Legislature intended to enact a new law, and not to declare what the old law was, having for its object to provide a simpler, speedier, and cheaper method of taking testimony in rei perpetuam memoriam before a commissioner, than the old one, if a party chose to resort to it, without repealing the old ,law; and this was all that was intended or done. How far the existence of this law might justify the courts in relaxing in matters of form, the requirement of the old law upon a bill to perpetuate testimony brought subsequent to the act, is a question I have not considered, and it may be one worthy of consideration, when it shall properly arise; but no such question is pertinent in a case commenced under the old law, and before the enactment of the new.
I have felt some doubt, though that doubt has not influenced my opinion in the least, whether the more *appropriate remedy of the plaintiff was not a bill quia timet, to have a schedule or inventory of the slaves taken and recorded, which would necessarily have included the prerequisite of identification, and, if need be, to have required bond and security of Smith for their forthcoming upon the death of the life tenant in the event of his claiming or setting up an adversary title to them. These are bills, founded upon the rights of the reversioner or remainderman, and the duties of the life tenant or those claiming under her, and are of every daj' occurrence; but I do not mean to say, that, though a preferable proceeding for the plaintiff, it was exclusive of the less eligible one she elected; and by which, to some extent, the same object was to be or might be accomplished, where no adversary title was asserted. In the one case, the proceeding by bill quia timet, she would have the slaves identified in the form of a schedule or inventory recorded, in the other only the depositions of the witnesses from which a court or jury would be called on by judgment, decree, or verdict, to ascertain and determine their identity.
I am, therefore, for reversing the decree of the court below, with costs of appeal. And, if it did not appear from the plaintiff’s petition, filed during the present term, for the purpose of having this cause taken up out of its turn on the docket, and heard as a privileged cause, that the life tenant was dead, and a suit in chancery now depending in the Circuit Court of Hanover for the slaves, whereby the right to file a bill to perpetuate has ceased and determined, I should be in favor of remanding the cause for further proceedings, to enable the plaintiff upon the bill and answer filed, to have the proper proceedings taken to perpetuate her testimony; but as that proceeding has been wholly superseded by the death of the life tenant, who was also the principal witness sought to be examined, and by the institution of the suit aforesaid, a dis-mission of her bill with costs in the Circuit Court follows as a necessary consequence.