# 𝖂𝖞𝖙𝖍𝖊𝖛𝖎𝖑𝖑𝖊.

Dove v. The Commonwealth.

July 15th, 1886.

1. CRIMINAL PROCEEDINGS—*Omnia presumuntur recte acta fuisse.*—Presumption of regularity in judicial proceedings extends to every step thereof. Burden of proof by record rests on alleger of irregularity.

2. IDEM—*Case at bar.*—Reco ·d shows that on first day of trial a jury (the recital of whose n· mes included "George T. Moon") were elected, sworn, &c., and having partly heard the evidence, were committed to the sherif'; and that on the second day, "the jury sworn on yesterday for th· trial," were brought in, &c., and having heard the evidence, but not the argument, were recommitted to the sheriff; and that on the third day, "the jury sworn for the trial" (the recital of whose names includes the name of "George T. Morris" instead of "George T. Moon") were brought in, &c., and having fully heard the argument, rendered their verdict. In the court below, no objection was made that "Moon" and "Morris" were different men.

HELD :

> This court must presume that the name of "Morris" was substituted for that of "Moon" by mere clerical error.

3. IDEM—*Evidence—Accomplices.*—An accomplice, not convicted of an infamous offence, is ordinarily a competent witness. *Oliver's Case,* 77 Va., 590.

Error to judgment of the circuit judge of Pittsylvania county, in vacation, refusing a writ of error and *supersedeas* to the judgment of the county court of said county, sentencing George W. Dove, who had been found guilty by the jury on an indictment for grand larceny, and whose term of confinement in

the penitentiary was by them fixed at the term of five years. At the trial exceptions were taken to several rulings of the court; and to said judgment of the circuit judge, prisoner obtained from one of the judges of this court a writ of error and *supersedeas.*

Opinion states the case.

*Hughes Dillard, Sr.,* for the plaintiff in error.

*Attorney-General R. A. Ayers,* for the Commonwealth.

RICHARDSON, J., delivered the opinion of the court.

The prisoner assigns two errors in the judgment and proceedings against him, and these will be considered in the order of their assignment in his petition.   He says: "It will appear from the transcript of the record that the jury which rendered the verdict against the prisoner in court on the 24th day of October, 1885, was not the same jury which was elected, tried, and sworn in court to try the cause against the prisoner on the 22d of October, 1885, but that a certain *George T. Moon,* who was *one of the original panel* sworn to try said cause, was *not a member* of the jury which *rendered a verdict* of guilty against the prisoner, but that a certain *George T. Morris* appears upon the record to have been *upon the jury* which *rendered said verdict* against the prisoner."   In a word, he charges that Morris was not sworn as a juror, and did not hear the evidence, but was one of the jury which rendered the verdict.

It is too plain for controversy that if the interpretation put upon the record by the counsel for the plaintiff in error were correct, and that if Morris, who had not been selected, tried, and sworn as a juror, and who had not heard the evidence, but only the argument of counsel, had intruded himself into the panel in the place of Moon, the regular juror, and had

participated in the deliberations of the jury on, and in the rendition of the verdict, and such fact had appeared of record, the court below would readily have set aside the verdict and granted a new trial, either upon motion for a *venire de novo* or in arrest of judgment, such being the remedies appropriate to errors on the face of the record. Ste. Pldg. 100; 4th Minor, 775; *Brown* v. *Ralston*, 4 Rand. 518. And the refusal of the court below to set aside the verdict, on the prisoner's motion, for such cause, would have been good ground for a review and reversal of its judgment by this court on writ of error.

In such case, there could have been no question that the party making the objection was injured by such an irregularity.

The case would indeed have been an anomaly in legal procedure; or, at least, one not easy to classify. So far, however, as it could be considered as an irregularity "in the impaneling of jurors," it might be embraced within the scope of section 21, chapter 158 of Code 1873, and would not be deemed sufficient to set aside a verdict unless the party making the objection was injured by the irregularity.

So far as it might be looked upon as a trial of the prisoner by a jury composed of a less number than twelve jurors, it would present a question of a much graver aspect. In such a case, the verdict has been held void. *Tileman* v. *Ailles*, 5th Smedes & Marshall, 378; Whar. Cr. Pl. & Pr. (8th ed.) sec. 733, and cases there cited.

But we think that a close scrutiny of the record will lead promptly to the discovery that the interpretation placed upon the record by counsel is wholly erroneous, if not purely fanciful. The record of the trial, in the county court, for the 22d day of October, 1885, reads thus: "G. W. Dove, who stands indicted for grand larceny, was again led to the bar in custody of the jailor of this court; and thereupon came the following

jury, to wit: G. W. Tompkins, W. J. Walton, Geo. D. Carter, Green W. Jones, S. S. Elliott, W. B. Riddle, Benjamin Terry, W. T. Farmer, G. T. Douglass, John H. Yeaman, John F. Lewis, and *George T. Moon,* who being elected, tried and sworn the truth of and upon the premises to speak, and having partly heard the evidence, were committed to the custody of the sheriff of the county, who is directed to keep them together without communication with any other person, and to cause them to appear here to-morrow morning at 10 o'clock." And the said record for the next day reads: "G. W. Dove, who stands indicted for grand larceny, was again led to the bar in custody of the jailor of this court, and *the jury sworn yesterday for his trial* were brought into court by the sheriff of this county, and having heard the evidence, but not the arguments of counsel, were recommitted to the custody of the sheriff," &c.

And the said record for the next day reads thus: "G. W. Dove, who stands indicted for grand larceny, was again led to the bar in custody of the jailor of this court, *and the jury sworn* for his trial, to wit: G. W. Tompkins, W. J. Walton, Geo. D. Carter, Green W. Jones, S. S. Elliott, W. B. Riddle, Benjamin Terry, W. T. Farmer, G. T. Douglass, John H. Yeaman, John F. Lewis, and *George T. Morris,* were brought into court by the sheriff of this county, and having fully heard the arguments of counsel, upon their oath do say: We, the jury, find the prisoner, George W. Dove, guilty of felony as charged in the within indictment, and confine him in the penitentiary five years," &c.

Now, observe, the order for the second day identifies the jury that day trying the case, with the jury which had been elected, tried, and sworn to try the case, without any attempt to recite the names of the twelve jurors. And the order for the third or last day also identifies the jury that day trying the case and rendering the verdict, with the jury sworn for the

prisoner's trial, by the use of the same language which was used for that purpose in the order for the day next before; to-wit: "And the jury sworn for this trial," &c., and in addition, under a *videlicet*, attempts to recite the names of the twelve jurors, and in writing the name of *George T. Moon*, the last of the twelve, miswrites that name as "*George T. Morris.*"

Could the most casual observation fail to assure any one that this was a mere clerical error? · To interpret this record as meaning that Morris and Moon were two different men; that Moon was the regular juror, and Morris the interloper and imposter, would violate all experience, every rule of probability, and every presumption in favor of the regularity and integrity of legal procedure. The presumption in favor of the regularity of the proceedings of courts extends to every step and part thereof, and the burden is on him who alleges irregularity to show affirmatively by the record that the irregularity exists. In all cases of doubt there prevails the maxim, "*Omnia presumuntur recte acta fuisse.*" If such irregularity as the intrusion of an unsworn stranger into the place of a regular juror occurred, it is certain that there is no evidence of it in the record beyond the bare suggestion which arises out of the mere clerical variance in the name of one juror, and that occurring in the unnecessary recital of the names of the jurors, whilst the inference deducible from that variance is completely overcome by the pointed and express identification of the jury which rendered the verdict with the jury which was first sworn to try the case. Certainly no notice was taken of the alleged irregularity pending the trial in the court below, nor was there any motion even to set aside the verdict and grant a new trial on the ground of the alleged intrusion of a stranger into the place of a regular juror. Had such motion been made, it might have been easily shown what was the real state of the case,

whether the name "Morris" had been inserted for the name "Moon" by a mere slip of the pen or whether there had really been during the trial an invasion of the jury-box by an unsworn stranger. The absence of any effort to take advantage of the alleged irregularity in the court below, shows that it is trivial in character, and points us clearly to the conclusion that it was a mere clerical slip, in an unessential part of the record, and especially as it is incredible that a stranger could displace a regular juror and participate in the deliberation of a jury in a criminal case, and escape, not only the observation of the sworn jurors, but the sharp-sighted vigilance of the sheriff who had the jury in charge, of the clerk to whose call each juror daily responded, of the counsel both for the Commonwealth and the prisoner, and of the judge who presided at the trial. Surely the sharp vigilance which so readily detected this *misnomer* in the manuscript record of the trial, could not have failed to observe the strange face of an intruder into the jury-box! The idea that such a state of things could have existed is preposterous. Certainly the state of the record forbids that we should conclude that it did. It is the duty of this court, and perfectly consistent with established principles, to construe the record of the proceedings in the court below in the light of the presumption which arises in favor of the rectitude and regularity of all judicial proceedings, and in the absence of anything to the contrary on the face of the record, make every necessary presumption in favor thereof. We might, under the circumstances, even infer that Moon had, for cause, been withdrawn, and Morris lawfully substituted in his place, and the trial gone over *de novo*.

In *Dye's Case*, 7 Gratt. 662, this court held that if it did not appear on the record that the defendant objected, it would be presumed in this court that the court below discharged the jury impaneled in the case, for sufficient cause. And in uni-

son with this principle, there are numerous authorities. We have thus carefully considered at some length this point, because of the great reliance placed on it by counsel· for the prisoner.

2d. It is insisted that the verdict is contrary to the instructions given the jury by the court, to the effect that "the uncorroborated testimony of an accomplice in a crime is not sufficient to justify the jury in finding an accused guilty, and that unless they believe that the testimony of John H. Butler has been sustained by that of other witnesses in some material point, they must find the prisoner not guilty." And it is also insisted that Butler's testimony was not sustained by that of any other witness in any material respect.

An accomplice is unquestionably a competent witness against a prisoner charged with a crime unless he has been previously convicted of an infamous offence, and he is competent *alone*— that is, an accused may be convicted on the testimony of an accomplice uncorroborated by that of any other witness; it being the duty of the jury in all cases to consider the evidence and judge of the credit of the witnesses. *Byrd's Case,* 2 Va. Cases, 490; *Brown's Case,* 2 Leigh, 832; *Oliver's Case,* 77 Va. 590; Code 1873, Ch. 195, sec. 21. But though the instruction was an erroneous statement of the law of the case, yet the prisoner cannot and does not complain of it, as he was not and could not be aggrieved by it.

It is not denied, however, that the testimony of the accomplice, Butler, was clear and pointed as well as completely demonstrative of the prisoner's guilt. Butler was doubtless "a liar and a thief;" this he did not deny, but the jury believed his account of the crime for which the prisoner was tried and convicted. It was for the jury to weigh the testimony and believe or disbelieve it. It is, however, not true that there was no testimony in the cause which corroborated that of this accomplice.

For example, the intimacy of the prisoner with Butler; the former's over-anxious efforts to screen Butler from prosecution, and to induce him to leave the country to avoid it; the finding of the cotton purse which had contained the stolen money hidden away in the prisoner's house shortly after the theft; and the suspicious actions of the two together at the gap and about the stable of the prisoner on the night of the larceny; to say nothing of the enquiries which the prisoner had made as to the possession of money by Saunders, the owner of the stolen property. All these corroborating facts were proved by different witnesses independently of the testimony of Butler.

For these reasons we are of opinion that the judgment of the judge of the circuit court of Pittsylvania county in refusing a writ of error and *supersedeas* to the judgment aforesaid of the county court of said county, is correct, and that it, as well as the said judgment of the said county court, must be affirmed.

JUDGMENT AFFIRMED.