# Richmond

## J. L. HAGOOD v. COMMONWEALTH.

January 14, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*M. B. Booker, Thos. W. Ozlin* and *Irby Turnbull,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Edwin H. Gibson* and *Collins Denny, Jr., Assistant Attorneys-General,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

Milburn T. Neal was suspected of neglecting or of mal- treating his wife and for that reason he was, on the morning of May 21, 1930, between the hours of twelve and one, called from his bed and taken from his home by a group of persons who then whipped him until he vomited. Thereafter this indictment was returned:

"The grand jurors of the Commonwealth of Virginia, in and for the body of the county of Mecklenburg, and now attending upon the circuit court thereof at its August term, 1930, upon their oaths present:

"That on or about May 21, 1930, in the said county of Mecklenburg and within the jurisdiction of this court, John L. Hagood, Joe Hagood, Archer Thompson, Elmo Ranes, Oscar Cleaton, G. G. Martin, Bernard Cleaton and Frank Martin, composing a mob, did unlawfully and feloniously commit an assault and battery upon Milburn T. Neal, without authority of law, against the peace and dignity of the Commonwealth."

Upon it in due course J. L. Hagood was tried, convicted and sentenced to four years confinement in the State penitentiary. That judgment is now before us on a writ of error.

At the trial a general demurrer was interposed but the reasons relied upon for its support were not stated. Ordinarily this is insufficient. *Jayne* v. *Kane,* 140 Va. 27, 124 S. E. 247. But where constitutional rights are invaded they may be set up by general demurrer or otherwise, at any time, and even in this court for the first time. *Adkins* v. *Richmond,* 98 Va. 91, 34 S. E. 967, 47 L. R. A. 583, 81 Am. St. Rep. 705.

For the accused, it is said that this indictment does not inform him of the "cause and nature of his accusation" (section 8, Const. 1902, Va.), and that it is impossible to tell whether it is framed under section 4532 of the Code, which provides for the punishment of rioters, or under what is commonly known as the "lynch law." See Acts of 1928, at page 715, chapter 213.

■ It is of course necessary for an indictment to set forth all of the essential elements of the crime and if any of them are omitted it is fatally defective. If those things there charged may be true and if the accused may still not be guilty it is insufficient.

This is everywhere conceded and is the unquestioned law of Virginia, and so it is not necessary for us to buttress by authority an undisputed proposition. Of course when every fact necessary for conviction appears that is enough, and it likewise is sufficient if they appear by necessary implication.

As we shall hereafter see this indictment follows the language of the statute.

■ "The indictment pursues the language of the statute; and this is generally sufficient. The rule laid down by the authorities is, if every fact necessary to constitute the offense is charged or necessarily implied by following the language of the statute, the indictment will undoubtedly be sufficient." *Helfrick* v. *Commonwealth*, 29 Gratt. (70 Va.) 844, 845.

If there was any uncertainty in the mind of the defendant that could have been cleared up by a bill of particulars, but he did not ask for it. Such a bill is no substitute for an indictment and cannot make one that is bad, good, but it may supplement it and make certain that which had theretofore been stated only in general terms.

■ "The indictment, of course, must charge the offense, and if it fails to give the information necessary to enable the

defendant to concert his defense, such information may be supplied by a bill of particulars; but if the offense is not charged in the indictment, the defect cannot be supplied by a bill of particulars. A bill of particulars may supply the fault of generality or uncertainty, but not the omission of an essential averment of the indictment." *Pine* v. *Commonwealth,* 121 Va. 812, 93 S. E. 652, 659.

As was said in that case, whenever the indictment is comprehensive enough to embrace the offense charged but not specific enough to give the information to which the defendant is entitled, a bill of particulars should be called for and that is this case.

The defendant is charged with being one of a "mob" and in that capacity with feloniously assaulting Neal.

We need not concern ourselves with varying definitions of a "mob." That is set out with certainty in the Act of 1928, wherein it is declared in its first section "that a collection of people assembled for the purpose and with the intention of committing an assault and/or battery upon any person and without authority of law, shall be deemed a 'mob' for the purpose of this act."

Section 3 then goes on to provide:

"Any and every person composing a 'mob,' which shall commit an assault and/or battery upon any person without authority of law, shall be guilty of a felony, and upon conviction shall be confined in the penitentiary for not less than one year nor more than ten years."

An elaboration in the indictment of these express statutory provisions would be to darken counsel. They are too plain for argument and could not possibly have been misunderstood. The accused will be presumed to have known of them and of course this court must take cognizance of general State statutes. Moreover, the indictment upon its face charges a felony and so primarily was not an indictment

for a simple assault, while rioters, under said Code section 4532, are guilty only of a misdemeanor where an assault is made.

It is true that in *Mackaboy et al.* v. *Commonwealth*, 2 Va. Cas. (4 Va.) 268, the court said that it was not sufficient to merely charge one with being a "rioter" without also stating facts which in law constitute a riot, but there is this vital difference between that case and the one in judgment: The statute itself has written into it just what a mob is. In the one case it would be necessary to descend to particulars, to state who is a "rioter;" in the other that necessity is supplied by the statute which defines a "mob" in the act which creates the offense.

Under our racial integrity laws it is a crime for a white man to marry a negro woman and an indictment which charged such an act would be sufficient. It would not be necessary to go further and state who, in contemplation of law, are colored persons. There also the definition of a colored person is supplied by statute. Acts 1930, page 96, chapter 85.

The claim that no crime is charged, or that one is charged in terms too vague to be intelligible, is without merit. Further elaboration is unnecessary. We think it perfectly plain that the indictment deprives the accused of no constitutional right and is amply sufficient.

Objection is also made to the admissibility in evidence of statements made by members of the mob at the time of the whipping to the effect that Neal had run his wife away from home and put her in a Catholic institution in Norfolk. All that was then said and done was part of the *res gestae* and competent. Wharton on Evidence, section 258; *R. Co.* v. *Gordon,* 21 How. St. Tr. 542. Moreover, the statute made it necessary to prove the intent with which the mob had gathered and this evidence of its purpose is cogent and convincing. Since these charges had been

made, it was but fair to Neal that he should have been permitted to deny them.

■ Objection is also made to the rejection of instruction "Y" which reads as follows:

"The court instructs the jury that if they believe from the evidence that the accused took no part in assembling the mob which assaulted Neal, and that in going with the crowd to Neal's and doing what he did there, he was moved by his friendly relations with Neal and his desire to serve him as far as he could, they should find him not guilty."

This the court rejected because it was of opinion that the matter there dealt with had been covered by instructions A-1 and B-1 already given. They read as follows:

"The court instructs the jury that, in order to find the accused guilty as charged in the indictment, they must believe beyond any reasonable doubt, (1) that the accused acted in conjunction with others in assembling a collection of people or joined such an assembly, he, the said J. L. Hagood, intending that it should commit an assault and battery upon Milburn T. Neal, and (2) that he, J. L. Hagood, did so with the intention of having such assemblage, or members thereof, commit such an assault and battery upon the said Neal. The burden of proving such facts is upon the Commonwealth, and unless said facts are proved beyond any reasonable doubt, the jury should find the accused not guilty.

"The court instructs the jury that if they believe from the evidence that the accused took no part in the forming of the mob which committed an assault and battery upon Neal, and did not join them with the intention of participating in any way in making an assault upon the said Neal, or that the accused had no intention of aiding, abetting, or encouraging the committing of such an assault and battery upon the said Neal, and actually took no part in said assault and battery, they should find the accused not guilty."

■ The reasons assigned by the trial judge for his refusing this rejected instruction are amply sufficient. It should have been rejected for another reason. Hagood, by his own admission, went with this mob knowing its purpose. It was he who called Neal from his home and bed and delivered him to it. He went with them to the place of whipping and stood by without protest until it had reached a point at which it had become brutal.

■ Finally it is said that "the court erred in refusing to grant the motion for a new trial on the ground that the accused was not present when the court considered and passed upon the instructions to the jury."

Of course a person tried for a felony must be personally present during the trial. The Code so provides. Section 4894. *Noell* v. *Commonwealth*, 135 Va. 600, 115 S. E. 679, 30 A. L. R. 1345.

What actually occurred is set out in this certificate of the trial judge:

"It is further certified, as an incident of the trial, that on October 24, 1930, at about noon, the court took a recess for the purpose of considering the instructions to be given, and for the purpose of letting all parties concerned get lunch, and the judge and counsel went to the offices of Irby Turnbull, of counsel for the accused, for the purpose of considering the instructions. There, the instructions were argued at length and passed upon by the court, and the court gave and refused certain instructions hereinbefore set out, and counsel for the accused thereupon dictated their exceptions to certain instructions given and exceptions to the refusal of the court to give others to Mr. Phlegar, the court stenographer taking the evidence. All of which, the argument of counsel on the instructions, the action of the court in giving and refusing instructions, the notations by the court on the instructions stating that a given instruction had been granted or refused, the exceptions of

counsel for the accused, was done in the absence of the accused, and without any objection from counsel for the accused to the absence of the accused, and without the attention of the court being called to his absence."

The consideration of instructions in chambers is well-nigh the uniform practice in this State, and is entirely unobjectionable. When this is done the judge usually indicates to counsel what he expects to do, all of this in the absence of the accused. He has no more constitutional right to be present then than he would have the right to be present at the judge's home should he continue the investigation and consideration of this matter there. Instructions are finally given and rejected by the court and of course he must be present at every stage of his trial.

We need not concern ourselves with instructions given. The record affirmatively shows that they were given in court and in the presence of the accused. When we come to the rejected instructions, it appears that when they were tendered and considered by the judge the court was in "recess," and so far as the record shows, technically speaking, they were neither tendered to nor refused by the court. If they were never tendered to the judge in court, then nothing that he did with them out of court could be error. Before error can be predicated upon the conduct of the judge, it must appear that the rejected instructions were requested by counsel of him, sitting as a court. If we assume that this was done, we must also assume that they were rejected by him sitting as a court. The fact that the instructions were presented by counsel to the judge in chambers and considered by him there, and that he then indicated what he expected to do, did not make an act of the court.

If it be said that this is a narrow construction, it is to be remembered that the claim itself now made, in the circumstances stated, does not appeal to one as having sub-

stantive justice back of it. The error, if there be error, was invited, and "they that take the sword shall perish with the sword."

█ The instructions are in the record and could have gotten there in two possible ways. They could have been given to the clerk by the judge out of court, or they could have been given to him by the judge in court. If we are to indulge in the first presumption, then we are to presume error, and this we can never do.

█ "The presumption in favor of the regularity of the proceedings of courts extends to every step and part thereof, and the burden is on him who alleges irregularity to show affirmatively by the record that the irregularity exists. In all cases of doubt there prevails the maxim *'omnia prae-sumuntur recte acta fuisse.'*" *Dove* v. *Commonwealth*, 82 Va. 301; *Smith* v. *Grosjean*, 1 Pat. & H. 109; *Gilligan's Case*, 99 Va. 816, 37 S. E. 962; *Anderson's Case*, 100 Va. 860, 42 S. E. 865; *Litton's Case*, 101 Va. 833, 44 S. E. 923; *White* v. *Reed*, 146 Va. 246, 135 S. E. 809.

Since the instructions are in the record, the presumption is that they were put there by the court in due and orderly procedure. If we are to indulge in guesswork, the chances are that they were handed to the clerk at the time when the instructions approved were given to the jury. This is the general practice. That instructions tendered on behalf of the accused and rejected are not stressed in the presence of the jury is due to consideration for him. Of course, as we have seen, he must be present when final action is taken; and, as we have also seen, it affirmatively appears from the record that he was present during every moment of his trial. The situation here is not unlike that in *Palmer* v. *Commonwealth*, 143 Va. 592, 130 S. E. 398.

For reasons stated, we find no error in the record. The judgment appealed from is affirmed.

*Affirmed.*

EPES, J., dissenting:

This case has given me some trouble. My original impression was that this case would have to be reversed, because the accused was not present when the instructions asked for by his counsel were refused. After hearing the argument I thought, perhaps, I was mistaken about this. But after more mature consideration of the arguments, written and oral, and the opinions prepared by Justices Holt and Hudgins, and an examination of the authorities, my judgment accords with my original impression.

The certificate of the judge, I think, shows affirmatively that the final action taken by the court in refusing the instructions asked for by counsel for the accused was taken not in the presence of the accused.

To assume that, because the refused instructions are contained in the record, they must have been refused in the presence of the accused is to assume something that the court in its certificate asserts is not a fact; and, therefore, cannot be assumed.

To take the position that a defendant is to be treated as not having asked for an instruction because it does not affirmatively appear that he asked for it in open court and does appear that the judge refused to give it while he was taking a recess for the purpose of considering what instructions he would give, seems to me to be too narrow and technical a view to take.

Much more impressive, I think, is the argument of the opinion of the court, that the error which the court committed in refusing the defendant's instructions when he was not present was invited error, to which he is estopped to object. But as this court has repeatedly held that the accused cannot waive the right to be present at any stage of the trial, I am forced to the conclusion that the doctrine of invited error cannot be here applied.

It may be that the law should not require that the accused be present when final action is taken upon instructions asked for by his counsel; and, from the opinion of the court, I judge that this is the view of the majority of the justices participating in this decision. But however this may be, the law does so require; and, I think, the plain intendment of the statute is that the final action of the court in giving *and refusing* instructions shall be so taken in the presence of the accused that the accused, if a person of reasonable intelligence, will be afforded the opportunity, if he so desire, of knowing what is being done. If this be true, then the statute should be enforced according to its spirit, and not circumvented by ingenious argument or technical and narrow constructions, even though the requirement of the statute may be thought to require, in this regard, compliance with an unnecessary or unreasonable technicality.

HUDGINS, J., dissenting in part.

The accused's assignment of error No. 7 involves the application of that part of the Code, section 4894 reading: *"That a person tried for a felony shall be present during the trial."* The statute, quoted in this mandatory form, is merely declaratory of a common-law principle. Judge Kelly, in *Noell* v. *Commonwealth*, 135 Va. 600, 115 S. E. 679, 30 A. L. R. 1345, said:

"That principle did not spring solely from a regard for the welfare of the accused. The public has an interest in every case involving the life or liberty of a citizen, and both in England and in this country it has long been recognized as a settled rule of the common law, based as well upon public policy as upon the interest of the accused, that his continuous presence, from arraignment to sentence, is an essential part of the process of law provided for his trial and without which the courts have no jurisdiction to pronounce judgment upon him."

A principle so imbedded in our system of jurisprudence and one that has remained in our statute without change in this particular for so long, should not be curtailed, or frittered away by judicial construction. The right with which the statute deals, not being for the sole benefit of the accused, is one which he cannot waive. This has been the uniform ruling of this court since its organization. The following are a few of the cases so holding: *Sperry's Case*, 9 Leigh (36 Va.) 623, 33 Am. Dec. 261; *Hooker's Case*, 13 Gratt (54 Va.) 763; *Jackson's Case*, 19 Gratt. (60 Va.) 656, 664; *Lawrence's Case*, 30 Gratt. (71 Va.) 845; *Bond's Case*, 83 Va. 581, 3 S. E. 149; *Spurgeon's Case*, 86 Va. 652, 10 S. E. 979; *Shelton's Case*, 89 Va. 450, 453, 16 S. E. 355; *Snodgrass' Case*, 89 Va. 679, 687, 17 S. E. 238; *Gilligan's Case*, 99 Va. 816, 37 S. E. 962; *Jones* v. *Commonwealth*, 100 Va. 842, 41 S. E. 951; *Kibler* v. *Commonwealth*, 94 Va. 804, 26 S. E. 858; *Bowen* v. *Commonwealth*, 132 Va. 598, 111 S. E. 131; *Fetters* v. *Commonwealth*, 135 Va. 501, 115 S. E. 692.

Justice Harlan, in the case of *Hopt* v. *Utah*, 110 U. S. 574, 4 S. Ct. 202, 28 L. Ed. 262, states the doctrine thus:

"That which the law makes essential in proceedings involving the deprivation of life or liberty cannot be dispensed with or affected by the consent of the accused, much less by his mere failure, when on trial and in custody, to object to unauthorized methods. * * * If he be deprived of his life or liberty without being so present, such deprivation would be without due process of law required by the Constitution."

The fact that the accused is not able to waive the right to be present during the trial of a felony case, eliminates the suggestion of invited error in the contrary opinion.

The Attorney-General in his brief relies on the case of *Palmer* v. *Commonwealth*, 143 Va. 592, 130 S. E. 398, and the contrary opinion refers to this case, but evidently

recognizes that it is not an authority for the position taken, because no stress is laid thereon. In that case this court held that the argument on instructions, and the consideration of instructions by the judge, were not a part of the trial, but it expressly held, that the ruling of the court on the instructions either in granting, or refusing, them was a part of the official action of the court and a part of the trial. Judge Prentis in that case had this to say:

"The considering of proposed instructions by a court, if done in the absence of both the jury and the accused (and it should generally be done in the absence of the jury), cannot affect the prisoner's rights in any true sense. This is neither official nor unofficial action, but merely prudent preparation therefor. His rights can only be affected after the trial judge has determined the legal questions so raised and when he communicates the instructions to the jury, or *refuses to grant* any instructions which are prayed for. This is official action and when any official action is taken in the trial which affects his rights, the accused must be present."

The contrary opinion does not expressly hold, but strongly suggests, that the accused is barred by estoppel from urging this court to consider the fact that he was not present when the instructions were refused. As I have pointed out above, that which the law makes essential in proceedings involving life or liberty cannot be dispensed with, or affected by, the conduct of the accused. The presence of the accused during the trial from arraignment to final judgment is jurisdictional, and cannot be waived. See authorities cited and others collected in 3 Michie's Dig. page 260.

The opinion finally admits that the refused instructions are a part of the record, and without a particle of evidence on the subject, states that they could have become a part of the record only in one of two ways. (1) They could

have been given to the clerk by the judge out of court, or (2) they could have been given to him by the judge in court. "If we are to indulge in the first presumption then we are to presume error and this we can never do." Then the opinion repeats the same error that Judge Richardson made in the case of *Dove* v. *Commonwealth*, 82 Va. 301, by applying a principle applicable to a civil case on review in this court to a felony case.

Judge Prentis, in *White* v. *Reed*, 146 Va. 246, 135 S. E. 809, quotes the language used, applies it in a civil case, and cites numerous civil cases in support of the doctrine, but does not refer to a single criminal case.

Judge Keith, in the *Gilligan Case*, 99 Va. 816, 37 S. E. 962, emphasizes the fact that this doctrine cannot be applied to criminal cases in the following language:

"The contention of the prisoner is, first, that a verdict upon an indictment for a felony must be rendered by the jury in open court in the presence of the prisoner, and received and recorded by the court; that these essential facts must appear from an inspection of the record, and no intendment will supply their omission, or the omission of any one of them; that the maxim '*omnia praesumuntur rite et solemniter esse acta*' has no application to records made in trials for felony, and that courts cannot resort to any presumption to supply the omission from the record of that which should appear by the record.

"To all this we give an unqualified assent. * * *

"But while no intendment can supply an omission from the record of that which is material, all proper inferences may, and must be, drawn from that which does appear, and while the presumption that all things have been properly done in a court of record cannot be resorted to in a criminal case, it is equally true that there can be no presumption of error."

Judge Phlegar, in a dissenting opinion concurred in by

Judge Buchanan, states the principle thus: "The presumption that a court of general jurisdiction acts rightly cannot supply the substantive or essential parts of the record in a criminal case."

Thus we see that both in the majority and minority opinions this court expressly stated that the principle does not apply in a felony case. The majority opinion held that proper inferences might be drawn from the entire record, but there was no presumption of whether or not the court had acted rightly on a jurisdictional matter. In the same case Judge Keith used this significant language: "We are aware that courts rigidly enforce the prisoner's right to be present at every stage of the trial from his arraignment to the sentence, when anything is to be done which can affect his interest. We are aware that no court has been more zealous and exacting in enforcing this privilege, and in requiring that it should appear from the record, than this court * * *."

There is no need to indulge in any presumption in this case. The record contains the positive statement that the instructions were refused in the absence of the accused. The objection is to the action of the court in refusing the instructions in his absence, not to the act of delivering them to the clerk in his absence. If we are to indulge in guessing how they got into the custody of the clerk, the possibilities are numerous. To suggest a few, the clerk might have been present when they were refused and there took immediate possession; one of the five interested attorneys might have given them to the clerk; they might have been left in Mr. Turnbull's office and were later given to the clerk by one of his employees; the stenographer might have kept them to copy into the record and later delivered them to the clerk. The court reporter usually takes charge of exhibits and papers filed during the progress of the trial, marks them for identification, and when the trial is concluded delivers such

papers to the proper custodian. The handing of instructions or any other paper to the clerk does not require any knowledge of law. The determining of what instructions should be given, refused, or modified, requires the exercise of legal knowledge and is judicial. The judge made his decision, earmarked each instruction for identification. This completed his official judicial act and was final.

The opinion makes these various suggestions of both law and fact, but finally decides the point on the ground that the refused instructions were never presented to, or refused by, the court, but by the judge in chambers, or recess of the court. If they were never tendered to the trial judge, never passed upon by the trial judge, they do not constitute a part of the record, and yet the opinion says they are "in the record."

There was no bill, or certificate of exception, used in this case, but a "stenographic report of testimony and other incidents of the trial." Some of the incidents of the trial were the ruling of the court on instructions, the exceptions noted, the notations of the judge on the instructions given and refused, the statement of when, where and under what circumstances the instructions were considered, and the final ruling of the judge in refusing those that were refused. There was only one signature of the trial judge to the entire stenographic report, and finally, a certificate of the clerk certifying that the completed report was duly filed with him eight days after the final order was entered.

Now, I am in entire accord with that part of the opinion in which it is stated, that the consideration of instructions in chambers, is unobjectionable, but I cannot reconcile this statement with the holding that because the refused instructions were tendered, considered and refused in chambers, or recess, they were never tendered to, nor refused by, the court. It is also stated that "at the most they were instructions counsel probably intended to ask the court to

give and did not." It must be remembered that the record reveals that the introduction of evidence before the judge and jury was completed about noon; that the court stated the recess was taken for the purpose of considering the instructions. Just when the instructions were requested, or tendered to the judge does not appear; but it does appear that either before the judge left the bench or immediately thereafter he had the instructions in his possession. They were tendered to and accepted by him in his official capacity; as trial judge he heard argument for and against them; as trial judge he ruled thereon; as trial judge exceptions were taken to his ruling; as trial judge he made notations on them; as trial judge he signed the stenographic report certifying all the above was done by him in his official capacity and in the absence of the accused. Just when and where did he lose his official powers? When the jury retired, or when he left the bench, or was walking down the stairs from the court room? If he lost his powers, when and where did he regain them? It will be quite a surprise to the judge to learn that when he refused the instructions he was not acting officially, and more surprising still to five able, experienced and busy lawyers to learn that they wasted approximately two hours of argument for and against instructions and in noting exceptions to the ruling of some person other than the trial judge in his official capacity.

Is it possible that the law in this State is, that after the introduction of evidence in the trial of an accused charged with murder, where there is substantial testimony tending to prove that the killing was done in self-defense, the trial judge can retire to chambers or the clerk's office and there receive instructions desired by both the attorneys for the prosecution and for the accused, hear argument for and against the same, there refuse to give any instruction embodying the theory of self-defense, return to the court room,

read to the jury the instructions he has previously determined to give, receive the verdict of the jury finding the accused guilty of murder in the first degree, overrule a motion to set aside the verdict, pronounce sentence on the accused and adjourn court for the term, and on the next day, when he is presented with a bill of exceptions incorporating therein the instructions refused, the exception of counsel to the ruling, and refuse to sign the bill, on the plea, that the instructions were never tendered to him in court, nor was any reference made to them in the court room? Is there any doubt that, under such a state of facts, this court would forthwith issue a writ of mandamus, compelling the judge to sign such a bill of exception? If we can consider the action of the trial judge in refusing the instructions for any purpose, we must consider it for all purposes.

For the reasons stated I cannot concur in the opinion. I think the judgment of the trial court should be reversed, the verdict of the jury set aside, and the case remanded for a new trial.