COURT OF APPEALS OF VIRGINIA

<div style="margin-left:auto"><strong>UNPUBLISHED</strong></div>

Present:  Judges Humphreys, Huff and AtLee
Argued by videoconference


TAMAS FEKETE

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1012-20-4                      JUDGE ROBERT J. HUMPHREYS
                                                    APRIL 13, 2021
GYORGYI FEKETE


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Penney S. Azcarate, Judge

Karen Leiser (The Leiser Law Firm, on brief), for appellant.

No brief or argument for appellee.


On November 8, 2019, following a hearing, the Circuit Court of Fairfax County ("circuit

court") ordered Tamas Fekete ("father") to pay Gyorgyi Fekete ("mother") $393 per month in

child support. The circuit court also determined that father, who is self-employed, makes

$120,000 in annual income after deducting his reasonable business expenses. On appeal, father

argues that the circuit court's determination of his reasonable business expenses was erroneous.

He also asserts that the circuit court erred by crediting mother with child care expenses.

## I.  BACKGROUND

Father and mother were married on April 23, 2001, and divorced on June 22, 2018. They

have two minor daughters together. The divorce decree stipulated that, in addition to paying for

the children's health care, mother paid $1,319 monthly for work-related child care and stated that

the circuit court found father's income from self-employment to be $5,000 a month or $60,000 a

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

year. The divorce decree also required father to pay $537 a month in child support to mother. However, for the purposes of calculating child support, the circuit court attributed only 127 custodial days to father.

On June 14, 2019, father filed a motion in the circuit court to terminate mother's child support. On July 8, 2019, father filed a motion to receive child support. He argued that there had been a material change in circumstances—the youngest child had aged out of full-time daycare and, as a result, mother's child care costs had decreased—and the joint effect of the material change and discrepancy between the parties' incomes was that mother now owed him child support.

On October 30, 2019, the circuit court held a hearing on father's motions, during which father asserted that because he owned several businesses and was self-employed, his income had "always been kind of tricky to document." His 2018 tax returns showed a gross annual income of $128,900; however, father claimed that his income was less than $4,000 a month after business expenses were subtracted and that he relied on "personal loans [from family and friends] just to stay above the water." He stated that his primary income was from an audio and video equipment and installation company that he started in 2005. He testified that he owned several businesses but asserted most of them were not profitable. He previously applied for a job at Best Buy and subsequently turned it down when the company only offered him $40,000 a year.

Father testified that he traveled to Slovakia with the parties' daughters every summer, as well as every other Christmas, and that the tickets usually cost him approximately $3,000. He asserted that those purchase were not a reflection of his income because "[y]ou don't need income for a credit card. You have to pay it off later." Father admitted that he mixed business

and personal expenses and transferred money back and forth between "personal" and "business" accounts; he acknowledged that he used personal funds to pay business expenses and vice versa.

Upon inquiry by the circuit court, father admitted that customers occasionally paid him via Venmo and that those funds were not reflected on the bank account or credit card statements he submitted into evidence. Father also testified to getting income through the crowd-sourcing website GoFundMe and to receiving cash payments and gifts. He did not submit records for either of those sources of funding to the circuit court. Father asserted that he had consistently paid his monthly child support until the hearing on October 30, 2019, but mother presented evidence that she had not received any child support payments from father since July 2019.

The parties agreed that father's custodial days with the children per year had increased and that mother was no longer paying $1,319 in child care costs. However, they disagreed about whether she was incurring a lesser amount of child care expenses. Because of her work schedule, mother stated that she still needed some child care help in the early morning and late afternoon hours. As a result, mother used the services of a babysitter, Gaby Budd ("Budd"), to ensure the children left and came home from school safely during her custodial weeks. She produced a contract signed by herself and Budd for bi-weekly child care at a rate of $400 a week.

After mother's testimony, father called a rebuttal witness, Bernice Alfonso ("Alfonso") who testified that Budd was a part-time nanny for the Alfonso family, as well. Budd also took care of Alfonso's children before and after school. Alfonso testified that she introduced Budd to mother and knew that Budd also worked for mother.

The circuit court ultimately found that a material change in circumstances had occurred since the June 22, 2018 child support order because the number of days the children spent with each parent had changed and mother's work-related child care costs had decreased. The circuit court used the factors in Code § 20-108.2 to determine how much support each party owed and

did not deviate from the statutory guidelines. The order regarding child support was entered on November 8, 2019.

On November 27, 2019, father filed a motion to reconsider and asked the circuit court to recalculate his income and "eliminate the work-related child care expense." On the same day, November 27, 2019, the circuit court suspended the November 8, 2019 child support order, pending resolution of the motion to reconsider. On December 6, 2019, father noted an appeal to this Court regarding the modified child support order. On December 11, 2019, the circuit court denied father's motion to reconsider. On May 29, 2020, this Court dismissed his appeal for lack of jurisdiction because the suspension order was still in effect and a final order had not yet been entered by the circuit court. On August 17, 2020, the circuit court dissolved the order of suspension and entered its November 8, 2019 child support order *nunc pro tunc*. Subsequently, father filed this appeal.

## II. ANALYSIS

### Standard of Review

Code § 20-107.2 vests authority in the circuit courts to determine the appropriate amount of child support owed by each parent upon divorce. See Code § 20-107.2 ("Upon entry of a decree providing . . . for a divorce . . . the court may make such further decree as it shall deem expedient concerning the . . . support of the minor children of the parties . . . ."). This Court reviews circuit court decisions awarding child support for an abuse of discretion and will not reverse on appeal unless the award is plainly wrong or unsupported by the evidence. See Young v. Young, 3 Va. App. 80, 81 (1986). There is a rebuttable presumption that if the circuit court followed the guidelines set forth in Code § 20-108.2(B) in determining a child support award, the award is correct. See Code § 20-108.2(A)-(B).

- 4 -

After a child support amount is determined, the circuit court has jurisdiction to revise and alter it. See Code § 20-108; see also Mayhood v. Mayhood, 4 Va. App. 365, 369 (1987). "However, the court may alter its prior decree only if a material change in condition and circumstances has occurred, and the burden of proof is on the party moving for an increase or decrease in the support amount." Mayhood, 4 Va. App. at 369. On appeal, we review the evidence in the light most favorable to the prevailing party in the circuit court. See Hughes v. Gentry, 18 Va. App. 318, 321-22 (1994).

<center>Father's Income and Reasonable Business Expenses</center>

Code § 20-108.2 governs calculation of child support awards and states, *inter alia*, that, "'gross income' means all income from all sources" and that "gross income shall be subject to deduction of *reasonable* business expenses for persons with income from self-employment . . . ." Code § 20-108.2(C) (emphasis added). If the circuit court found that a material change had occurred and a revised support award was necessary, every factor relevant to calculating child support under Code § 20-108.2 was reviewable, including each party's income. Here, father argues that the circuit court erroneously found that $8,900 was a reasonable deduction of business expenses from his gross income.

At the hearing, father introduced his 2018 tax returns—his most recent tax documents at the time of the hearing—into evidence. Because he is self-employed, he filed as a sole proprietor. On Schedule C of Form 1040, father's gross income and gross profit were listed as $128,900. However, father claimed that after business expenses were deducted, he made less than $4,000 a month, or $48,000 annually, but refused to state an exact amount of net pay or otherwise document his business expenses.

Both father and the circuit court used the term "imputed" to describe the circuit court's determination regarding father's income in the November 8, 2019 support order. This was

misleading. In actuality, the circuit court was simply tasked with reviewing the evidence presented and making a factual determination regarding father's gross income and "reasonable" business expense deductions under Code § 20-108.2(C). Similarly, the parties' divorce decree from June 22, 2018, did not impute income but instead stated, "[t]he [c]ourt finds that the [f]ather's income from self-employment is $5,000 per month."

On appeal, "[w]e give great deference to the trial court's factual findings." See Friedman v. Smith, 68 Va. App. 529, 543 (2018) (quoting Blackson v. Blackson, 40 Va. App. 507, 517 (2003)). Here, the circuit court made a factual finding that father's income after reasonable business expenses was $120,000. Because "[c]ourts are presumed to act in accordance with the law and orders of the court are entitled to a presumption of regularity," we presume that the circuit court reviewed all the evidence entered at the hearing before validly exercising its discretion to determine what deductions were reasonable. See Napert v. Napert, 261 Va. 45, 47 (2001); see, e.g., Milot v. Milot, 62 Va. App. 415, 424 (2013) ("[T]here is a presumption 'in favor of the regularity [in] the proceedings of courts [that] extends to every step . . . and the burden is on him who alleges irregularity to show affirmatively by the record that the irregularity exists.'" (quoting Dove v. Commonwealth, 82 Va. 301, 305 (1886))).

The record shows that father introduced a jumbled and disorganized set of financial documents at the support hearing. He admitted to regularly commingling personal and business funds and methods of payment. Father had a variety of income sources but the evidence regarding his legitimate business expenses was sparse and consisted primarily of father's statements without supporting documentation; any delineation between his personal and business funds was patently unclear. Father ultimately asked the circuit court to find—based on voluminous bank account and credit card statements replete with both personal and business purchases—that, although his gross income was $128,900, he had incurred over $80,000 of

business expenses and lived off of less than $48,000 a year. Additionally, evidence was presented that tended to prove that father traveled internationally at least once a year, took his children on vacation to Disney World, made monthly contributions to two different charities, owned multiple properties, and received personal loans that may or may not have required repayment.

The circuit court explicitly explained its reasoning and review of the evidence, saying:

> The father's income is very interesting. I did look through all the bank accounts . . . and I looked at the tax documents as well. He mixes his money together with business and his personal gains. He gets income in many different ways to include all his businesses, or to include loans that he doesn't expect to repay—or he doesn't have any guidelines to repay—GoFundMe to use for vacations, which is still income then. He has lease income. He has regular income, other business income. He has Venmo income. Based on that, I am going to impute $120,000 a year to father.

Essentially, father argues that the circuit court erred by not crediting his testimony regarding his income and expenses. Given that any determination of father's income and business expenses rests largely on the credibility that the circuit court as the fact-finder assigned to father's testimony and the weight it chose to give it, we cannot say that the circuit court erred in reaching the factual conclusions that father's gross income was $120,000 and that his reasonable business expenses amounted to $8,900. Therefore, we affirm its judgment in that regard.

<center>Mother's Child Care Expenses</center>

Code § 20-108.2(G)(3)(b), part of the statutory guidelines for determining child support, states that shared child support may include work-related child care costs. Father claims that the circuit court erred because it credited mother with work-related child care expenses in the absence of "any credible evidence to support her claim that she incurred [the expenses]." Father asserts that mother "perpetuated a fraud" on the circuit court by claiming to pay Budd $400

<center>- 7 -</center>

every other week. Father contended that mother did not actually need or use any work-related child support since their five-year-old daughter had started kindergarten.

On-brief, father re-argues the evidence regarding mother's child care costs, essentially asking this Court to adopt the role of fact-finder and make a different determination than the circuit court. He contends that Alfonso's testimony proved that mother's assertions regarding her work-related child care expenses were "bogus." He asks this Court to reverse the circuit court because it is a "paradox" that Budd could be getting the parties' children ready for school while simultaneously getting Alfonso's children ready as well.

Father "cannot point to any legal mistake by the trial court, but merely argues that it should have weighed the evidence differently than it did. That is not a proper appellate argument." Fadness v. Fadness, 52 Va. App. 833, 846 (2008) (discussing the circuit court's discretion in making an equitable distribution award). "[D]ecisions concerning . . . child . . . 'support rest within the sound discretion of the trial court and will not be reversed on appeal unless plainly wrong or unsupported by the evidence.'" Sargent v. Sargent, 20 Va. App. 694, 703 (1995) (quoting Calvert v. Calvert, 18 Va. App. 781, 784 (1994)). Further, because we are required to view the evidence in the light most favorable to the prevailing party below, here, mother, we grant her the benefit of any reasonable inferences and discard any evidence from father "which conflicts, either directly or inferentially, with the evidence presented by [mother] at trial." See Congdon v. Congdon, 40 Va. App. 255, 258 (2003). At the hearing, evidence was presented that tended to show mother was continuing to incur work-related child care expenses. Mother testified under oath that she used a babysitter during her weeks with the children and introduced a written contract, signed by Budd, that promised bi-weekly child care at a rate of $400 a week. Because the circuit court was the finder of fact and there is evidence in the record

to support its determination regarding mother's work-related child care costs, we cannot say that it erred.

### III.  CONCLUSION

For these reasons, this Court affirms the circuit court's judgment regarding father's income and mother's child care expenses.

<u>Affirmed.</u>